CORNELIA A. JOHNSON *vs.* MARIAN B. KNAPP & others.
SAME *vs.* ANSON GAGE & others.

Franklin.    September 20, 21, 1887.—January 10, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & KNOWLTON, JJ.

*Deed — Incumbrances — Adverse User — Implied Grant — Power of Attorney.*

An owner of land, to which was appurtenant the right to draw water through an aqueduct, conveyed the upper part with a like right, "reserving the privilege of conveying water" across the same to the lower part. The heirs of the owner conveyed the lower part with the "same privilege of drawing water and conveying the same" as their ancestor enjoyed "in his lifetime," covenanting against incumbrances. *Held,* that the right of the grantee of the upper part to take water was not an incumbrance within such covenant.

Evidence of the drawing of water from an aqueduct and its use on one lot for less than twenty years under an unrecorded grant, and of the first drawing on another lot twenty years before and its continued use thereon with the knowledge but without the consent of an owner of the aqueduct, and without any assertion of a claim of right, is insufficient to establish a right by adverse user.

An owner of two estates, to one of which was appurtenant a right to draw water from an aqueduct, while the other was supplied with water from the aqueduct through pipes maintained in the former estate, such maintenance being necessary to its enjoyment, conveyed the latter with no mention of the water or pipes. *Held,* that a grant of the right to maintain such pipes would be implied.

A power of attorney to make and deliver a good and sufficient deed "with or without covenants of warranty," as fully as if the grantor was personally present, authorizes the insertion of a covenant against incumbrances.

TWO ACTIONS OF CONTRACT. The declaration in each case alleged that the defendants, who were the heirs of Levi Gage, had, by a deed dated December 28, 1880, and acknowledged on December 31, 1880, conveyed an undivided half of a lot of land to the plaintiff; that each deed contained a covenant against incumbrances; and that the owners of other lots, named Williams, Pomeroy, Flint, and Clark, had each the right "to take and carry water from and through said land to his dwelling-house by means of one or more pipes, and to enter upon said land and repair said pipes when necessary so to do," which right constituted a breach of said covenant. In the first case, the deed of the defendants was executed under powers of attorney, each of which provided that Anson Gage should "make, execute, acknowledge, and deliver good and sufficient deeds and convey-

ances of the same, either with or without covenants of warranty, giving and granting to our said attorney full power and authority to do all acts necessary and proper to be done in the premises, in as full and ample a manner as we might or could do if personally present."

The various lots were shown on a plan used at the trial, a copy of which is here printed.

The cases were tried together in the Superior Court, without a jury, before *Brigham*, C. J., who ruled that on the facts found by him the actions could not be maintained, and found for the defendants; and the plaintiff alleged exceptions. The facts appear in the opinion.

*S. D. Conant* (*C. C. Conant* with him), for the plaintiff.

*A. De Wolf*, for the defendants.

W. ALLEN, J.   This is an action on the covenant against in-
cumbrances in deeds of land from the defendants to the plaintiff.
The declarations allege a right in each of the owners of four
dwelling-houses to take and carry water to his house from and
through the land by means of pipes, and to enter upon the land
to repair the pipes.   When the deed was given, an aqueduct or
pipe led from a well or spring on the Emory lot through what
was called the Williams lot to the land conveyed to the plaintiff,
and through and beyond that through the Flint lot and the Clark
lot to the dwelling-house upon the Pomeroy lot, and supplied
water from the spring to the dwelling-house upon each of the
lots.   The plaintiff claims that the owners of the Flint, Clark,
and Pomeroy lots have severally a right to maintain a pipe on
the plaintiff's land, and by it to take water from the plaintiff's
pipe.   If this right existed as to any of the lots, there was a
breach of the covenant against incumbrances.

The right of the owner of the Williams lot was to take water
from the aqueduct on his own land before it reached the plain-
tiff's land.   There was no right to enter upon the plaintiff's land,
or to take water from it.   This right, which pertained to the
Williams lot, could not be or work a breach of any covenant in
the plaintiff's deed, unless that deed purported to convey to the
plaintiff a right in the aqueduct or the water inconsistent with
the right appurtenant to the Williams lot.   This right had been
exercised as appurtenant to that lot since 1863, and was so used
at the time of the deed to the plaintiff in 1880.   Of course the
right to take the same water could not pass as appurtenant to
the plaintiff's land, and the fact that it did not pass could not be
a breach of any covenant in the deed to the plaintiff.   But this
is not all; in 1871, Levi Gage owned both the plaintiff's lot and
the Williams lot, and conveyed the Williams lot to the present
owner with the right of drawing water from the aqueduct, and
"reserved the privilege of conveying water across the northwest
corner of the premises, as now conveyed."   The conveyance from
the heirs of Gage to the plaintiff "includes the same privilege
of drawing water and conveying the same through land of said
Williams as enjoyed by said Levi Gage in his lifetime," thus

necessarily excluding from the grant the right appurtenant to the Williams lot.

In 1830, William Brooks, under whom the plaintiff claims, bought of Emory the right of carrying water from a well on Emory's land, by logs or pipes, through Emory's land to Brooks's house. In 1837, Brooks, by an instrument under seal but never recorded, granted to French and Town, their heirs and assigns, the privilege of drawing and conveying water in pipes or logs from Brooks's aqueduct " (situated under his horse shed) to the dwelling-house and barn of Richard French, or to any other person or place." This was the aqueduct which Brooks was using under his grant from Emory. French and Town then owned the Clark and Pomeroy lots, and immediately after the grant to them the pipe was extended to the Pomeroy lot, and water has flowed in it to the dwelling-house upon that lot ever since. The pipe crossed the highway from Brooks's land, and through the Livermore lot, the Flint lot, and the Clark lot, to the Pomeroy lot. Water was subsequently taken from the pipe on the Flint lot and the Clark lot to supply dwelling-houses upon those lots. The question is, whether the owner of either of these houses had a right, as against the plaintiff when she had taken her deed, to maintain a pipe on the plaintiff's land, or to have water flow through it, so as to constitute an easement in the land and an incumbrance upon the title to it. No such right could exist by reason of the grant from Brooks to French and Town, as that was not recorded, and there is no evidence that the plaintiff, or others through whom her title is derived from Brooks, had notice of it. As to the Flint lot, no claim is made under French and Town.

The plaintiff claims that rights had been acquired by adverse user. The deed to the plaintiff is dated on December 28, 1880, and acknowledged on December 31, 1880. The covenant against incumbrances must have been broken, if at all, when the deed was delivered. Unless there was an existing easement, then there was no incumbrance.

As to the Clark and Flint lots, it does not appear that there was twenty years' use of the water before the deed to the plaintiff. It was first drawn and used on the Clark lot in 1862. In regard to the Flint lot, it is said that water was first drawn from

the pipe in 1860, and that it has continued to be drawn and used since. If it can be assumed that the water was first drawn from the pipe twenty years before the delivery of the deed, it does not appear that there was an adverse user of it for twenty years. If drawing and using the water with the knowledge of the owners of the Brooks lot, and without asking or receiving their consent, and without any assertion of a claim of right, would show adverse user, it is not stated, and it cannot be inferred from the facts stated, that such use was continued for twenty years before the delivery of the deed. The facts are not sufficient to show an easement in favor of either of those lots, acquired by adverse user.

In regard to the Pomeroy estate, it appeared that water had flowed to it since 1837; but in 1865, one Carpenter, who then owned the plaintiff's land, acquired the title to the Pomeroy lot, and continued to be the owner of both estates until he conveyed to Pomeroy. If an easement in the plaintiff's land had been acquired, it would have been extinguished by the union of the fee of both estates in him. Carpenter, while the owner of both estates, conveyed the dominant estate to Pomeroy by a deed in which no mention is made of the water or the pipe, and the question is whether an easement in the plaintiff's land passed by implied grant in the deed from Carpenter to Pomeroy. The easement claimed is the right to maintain a pipe upon the plaintiff's land, and there to connect with the plaintiff's pipe and to draw from it water which flows to it from the Emory well.

At the time of the deed Carpenter was the absolute owner of both estates, and had all the rights to water from the Emory well which appertained to either estate. When he became the owner of the Pomeroy estate it had been for more than twenty years supplied with water from the Emory well, through pipes which had been maintained upon the plaintiff's land, then owned by Carpenter; and Carpenter continued to supply the house with water in the same manner until he sold to Pomeroy. At that time the pipe extended from the Pomeroy house into the plaintiff's land, and furnished the supply of water for the house. It sufficiently appears that the conveyance was made and the estate was occupied in view of the fact that the Pomeroy house depended for its supply of water upon that which flowed through

the pipe upon the plaintiff's land, and that the maintenance of the pipe upon that land was reasonably necessary to the enjoyment of the Pomeroy estate; and a grant of the right will be implied. *Grant* v. *Chase*, 17 Mass. 443. *Atkins* v. *Bordman*, 2 Met. 457. *Parker* v. *Bennett*, 11 Allen, 388. *Philbrick* v. *Ewing*, 97 Mass. 133.

It is true that the grant by Emory to William Brooks was limited to the right to take water for the use of the plaintiff's land, and that the right to take water for the use of the Pomeroy house was not appurtenant to the plaintiff's land, and Carpenter, as owner of that land, had no right to grant it, and a grant of it cannot be implied so as to create an easement in the land. But the right to maintain pipes in the land is distinct from the right to take water from the aqueduct on the land, and is a right which Carpenter could have granted without the right to take the water. The right to take the water could be derived only from the owner of the Emory land; the right to maintain the pipes could be derived only from the owner of the plaintiff's land, and a grant of the latter without a grant of the former may be implied. Carpenter as owner of the Pomeroy lot may have had a right to the water from the Emory well by grant or by prescription, or he may have been using the water without right. In any case a grant of all that he owned and was capable of granting in the aqueduct and the water which for thirty years had furnished the water supply of the house which he sold, would be implied.

We think that a grant of the right to maintain the pipe in the plaintiff's land was implied in the deed to Pomeroy. To this extent there was an incumbrance on the land at the time of the deed to the plaintiff.

The powers of attorney to Anson Gage, under which the deed from the defendants in the action against Knapp and others was executed, authorized the covenant against incumbrances in the deed.    *Exceptions sustained.*