ISABELLA WHITE *vs.* NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Norfolk.   November 16, 1891. — March 31, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Construction of Deed — Exception — Right of Way.*

A party in 1850 conveyed to a railroad company by a warranty deed two pieces of land, " together with the right to maintain and use said pieces of land for a railroad, hereby releasing all claim for damages for making, maintaining, and using said railroad.  Reserving the passway at grade over said railroad where now made." The passageway connected two tracts of land separated by the railroad, the larger of which was otherwise wholly inaccessible.  This way had been used before the railroad was laid out, and its use was continued without objection thereafter.  No petition for damages or a crossing was ever presented to the county commissioners.  *Held*, in an action of tort against the railroad company for the obstruction of the passageway, that it was the intention of the parties that the passageway should be annexed as a perpetual right to the larger tract, and that, as the railroad company had not seen fit to rely upon its location and the rights acquired under it, leaving its grantor to his petition for damages and a crossing, it must be deemed, as between its grantor and itself and their respective successors in title, to have elected to hold under the deed, and not under its location, and that it could not set up any claim under its location inconsistent with the rights given or reserved in the deed.

An exception may be created by words of reservation in a deed.

Whether, in a given case, the language of a deed shall be construed to create an exception or reservation, will depend upon the situation of the property and the surrounding circumstances, in the absence of a declaration by the parties in the deed of their intention.

TORT, for the obstruction of a private way claimed by the plaintiff, as owner of two parcels of land in Walpole and Norfolk, over the location of the defendant's railroad.

At the trial in the Superior Court, before *Bishop,* J., there was evidence tending to show that the plaintiff was the owner of two lots of land separated by the defendant's railroad, — the

larger of about thirty-three acres, lying north of the railroad, which formed its southerly boundary, and bounded on all other sides by land of other persons, and the other of about four acres, lying south of the railroad, which formed its northerly boundary, and bounded on the south by an ancient highway; that the right of way in question was a private crossing over the railroad, which before its obstruction by the defendant connected these two lots, and was the plaintiff's only means of access to the larger lot, either from the smaller lot or from the highway; that this way had existed as a defined roadway, and had been used in passing from the highway to and from parts of the lot north of the tracks before the location of the Norfolk County Railroad Company in 1848, whose lawful successor the defendant is, and its existence as a defined roadway or cart track, before 1848, was indicated on the plan filed with the written description of its location by the Norfolk County Railroad, by means of two parallel lines crossing the location; that the plan also showed highway crossings in like manner, but no mention was made of the " passway," or of any other private way, in the written description of the land taken by the location to which the plan was attached; that the way in question was used and enjoyed by the plaintiff's predecessors in title continuously after the location in 1848, and by the plaintiff from her purchase of the land of one Ware in November, 1885, until August, 1889, when the defendant took up the planks of the crossing, and built fences across the way on the side lines of its location, and prevented the plaintiff from further use of the crossing, for which obstruction and prevention this action was brought; that the plaintiff derived her title to the two lots through mesne conveyances from one Partridge, who, at the time of the location in 1848, was seised in fee of both lots, together with the dividing strip of land now owned by the defendant; that before 1848 the three parcels had constituted a single lot, owned by Partridge, the only means of access to all of which was by a way from the highway on the line of the " passway " or crossing in question; that on January 3, 1850, Partridge, in consideration of four hundred and fifty dollars, executed to the Norfolk County Railroad Company a deed, with full covenants of seisin and warranty, which conveyed two pieces or parcels of land,

" together with the right to maintain and use said pieces of land for a railroad, hereby releasing all claim for damages for making, maintaining, and using said railroad. Reserving the passway at grade over said railroad where now made "; that on April 1, 1865, Partridge conveyed both lots to one Ware; that after the death of Partridge, in 1873, the defendant continued to maintain at the crossway the crossing with the planking at the sides and between the rails of the railroad, as before, and the use of the crossing by Ware and the plaintiff was continued until the same was torn up by the defendant in 1889; and that no petition was ever presented to the county commissioners by Partridge or his successors for the assessment of damages or for any other purpose, and the county commissioners have never ordered any private way or crossing over the strip of land taken from Partridge by the location of 1848.

It was agreed by the defendant that any inferences of fact in respect to the intention of the parties which might be properly drawn from the foregoing evidence by the jury would be drawn by them in favor of the plaintiff. It was also agreed by the parties, that, if the plaintiff was entitled to maintain her action, she had suffered damages to the amount of four hundred dollars.

The judge ordered a verdict for the plaintiff for four hundred dollars, and reported the case for the consideration of this court. If the order was correct, judgment was to be entered on the verdict; otherwise, the verdict was to be set aside and a new trial ordered.

*R. D. Weston-Smith,* for the defendant, to the point that an easement like a right of way is no part of the fee which a grantor can except out of his grant so that it will remain in him as of his original estate, but is a new interest in the land, which he can create only by a reservation in the nature of an implied grant, and that the word " heirs " is necessary in order to reserve such an interest as an estate of inheritance, cited *Curtis* v. *Gardner,* 13 Met. 457; *Jamaica Pond Aqueduct* v. *Chandler,* 9 Allen, 159, 170; *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290, 321; *Ashcroft* v. *Eastern Railroad,* 126 Mass. 196; *Kennedy* v. *Owen,* 136 Mass. 199, 202; *Bean* v. *French,* 140 Mass. 229; *Hogan* v. *Barry,* 143 Mass. 538; *Wood* v. *Boyd,* 145 Mass. 176.

*D. E. Ware,* (*J. Hewins* with him,) for the plaintiff.

MORTON, J.   In view of the facts in this case, we think that the deed from Partridge to the Norfolk County Railroad Company operated to except the passageway for the benefit of and as appurtenant to the larger tract, and that it passed with that to the plaintiff.   The defendant does not claim that any importance is to be attached to the fact that the word " reserving " was used instead of " excepting."   It insists, more broadly, that by the terms of the reservation the passageway was limited to Partridge for his life; or if that is not so, that, the railroad company having by its location acquired the absolute right to use the tract for a railroad, all that remained in Partridge was the fee, out of which no way could be excepted; and that Partridge could create a perpetual easement only by a reservation in the nature of an implied grant, in which case the word " heirs " was necessary, and its omission was fatal.

We think it is evident from the situation of the land, and from the surrounding circumstances and those attending the giving of the deed, that it was the intention of the parties that the passageway should be annexed as a perpetual right to the larger tract.   It was clear that the larger tract would be wholly inaccessible unless Partridge and his successors in title were to have the right to use this or some other way.   The way had been used before the railroad was laid out.

Its use was continued without objection after the railroad was located.   No petition for the assessment of damages, nor application for a crossing, was ever presented to the county commissioners.   The consideration named in the deed was four hundred and fifty dollars, and the deed purported to convey the right to maintain and use the land for a railroad, and released the company from all " damages for making, maintaining, and using said railroad."   It would seem as if the whole matter had been settled by the giving and the taking of this deed.   Nothing indicates that Partridge intended to place himself in a position less favorable than he would have occupied if he had petitioned for the assessment of his damages and for a crossing.   And we think the reasonable inference is that both parties expected and intended the right to be a perpetual one.

We think, also, that this intention is effectually carried out by the deed.   The railroad company could have relied upon its

location and the rights acquired under it, leaving Partridge to his petition for damages and a crossing. It did not see fit to do that, but it elected to take a deed from him with full covenants of seisin and warranty. As between Partridge and it and their respective successors in title, it must be deemed to have elected to hold under that deed, and not under its location, and it cannot set up any claim under its location inconsistent with the rights given or reserved in the deed. It cannot use both as its advantage may decide. *Hyde* v. *Baldwin*, 17 Pick. 303, 308. *Smith* v. *Smith*, 14 Gray, 532. *Hubbell* v. *Warren*, 8 Allen, 173, 182. *Watson* v. *Watson*, 128 Mass. 152. *Fitch* v. *Baldwin*, 17 Johns. 161.

Having elected to take the deed and to hold under it, the railroad company was estopped to deny that Partridge had at least such an interest in the land conveyed to it that he could carve out of it the right of way in question, for the perpetual benefit of the land which he kept. The defendant does not question that an exception may be created by words of reservation, and it is clear that it may be done. *Bowen* v. *Conner*, 6 Cush. 132. *Dennis* v. *Wilson*, 107 Mass. 591, 592, 593. *Wood* v. *Boyd*, 145 Mass. 176. *Winthrop* v. *Fairbanks*, 41 Maine, 307. *Smith* v. *Ladd*, 41 Maine, 314. *Herrick* v. *Marshall*, 66 Maine, 435. Whether, in a given case, the language shall be construed to create an exception or a reservation, will depend upon the situation of the property and the surrounding circumstances, in the absence of a declaration in the deed by the parties of their intention as to the nature of a way. *Dennis* v. *Wilson*, 107 Mass. 591, 592. As already stated, the only reasonable construction in the present case would seem to be that it was the intention of the parties to annex the right of passing to the larger tract as a perpetual easement, and, the language of the deed being sufficient for that purpose, it follows that the passageway is to be so regarded. This view of the effect of the deed from Partridge to the Norfolk County Railroad Company renders it unnecessary to consider the effect of the deed and indenture from Ware to the defendant, or the acts of the defendant and its predecessors in maintaining the crossing for so many years.

*Judgment on the verdict.*