WILLIAM CLAFLIN *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Middlesex.   January 21, 1892. — December 7, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Easement — Deed — Reservation — Exception — Estoppel — Implied Grant — Secondary Easement — Prescription — Lost Grant.*

In 1833, A., B., and C. conveyed to a railroad corporation a strip of land sixty-six rods long and forty feet wide, bounded easterly and westerly by other land of the grantee, and northerly and southerly by lands of the grantors.   Following the description were the words, " as now staked out by the engineer of said corpo-

ration, and partly graded for a railroad, reserving to ourselves the right of a passageway over said railroad, which passageway is to be constructed and kept in repair by ourselves." Then followed an habendum in fee, with full covenants of warranty and seisin. The land thus conveyed was a portion of a tract of about twenty acres, which fronted on a certain street in a city, and ran back southerly therefrom. The effect of the conveyance was to cut the land of the grantors in two parts, leaving the southerly part without access to a public way. The last survivor of the grantors died in 1867. The railroad corporation did not file its location until 1835, and there was no existing way across the land when the deed was executed. *Held*, that the right of way was a reservation only for the lives of the grantors and of the last survivor, and not an exception.

In an action against a railroad corporation for the obstruction of an alleged right of way over the railroad, it appeared that, in 1833, the owners of a portion of a tract of land known as the T. land conveyed a strip of the land to the corporation, reserving to themselves a right of way over the railroad, which terminated in 1867 by the death of the last survivor of the grantors. In 1840, P., who owned in fee all the T. land except so much as had been conveyed by the deed of 1833, conveyed to the corporation a strip of land fifteen feet in width, and extending across his land. This strip adjoined the land of the corporation, and was on the south side of it. This deed made no reference to any right of way. In 1845, P. conveyed to the corporation a strip of land on the north side of the railroad, apparently of the same width as that conveyed by the deed of 1840. This deed contained the following clause: "Reserving also to myself and my representatives forever the right of passage to and from the crossings heretofore secured to us and those holding under us over said railroad. It being understood that I herein relinquish all claims for damage of whatever kind against said corporation, their successors and assigns, prior to this date." There was no evidence that P. was living when the acts of obstruction complained of were done. *Held*, that the word "crossings" in the deed of 1845 was evidently a clerical error for "crossing," which was undoubtedly the crossing reserved in the deed of 1833; that the word "heirs" being omitted, a reservation in fee was not created; and that, if the plaintiff had P.'s rights, these rights would cease on P.'s death, and the burden of proof was on the plaintiff to show that P. was living.

To work an estoppel, a statement must be particular, clear, and unambiguous.

The owners of a portion of a tract of land known as the T. land, which fronted on W. Street in a certain city, conveyed, in 1833, a strip of the land to a railroad corporation, reserving to themselves a right of way over the railroad, which terminated in 1867 by the death of the last survivor of the grantors. In 1873, the corporation filed a new location, taking a narrow strip of land lying adjacent to and southerly of a strip conveyed to the corporation by one P. in 1840. A. was then the owner of the strip taken, and also of land lying southerly of it, the whole being part of the T. land. In 1874, A. conveyed the strip so taken to the corporation by a deed containing the following words, after the description of the land conveyed: "Reserving to myself and my heirs and assigns a right of way across the tract of land hereby conveyed to the crossing heretofore secured to me over the said railroad to W. Street." *Held*, in an action by A. against the corporation for the obstruction of the alleged right of way over the railroad, that the corporation was not estopped by the acceptance of the deed to deny A.'s right to cross the railroad; and that A. had not such right of way by implied grant.

A reservation, in a deed of a strip of land to a railroad corporation, of a right of way,

over the strip conveyed, does not give the grantor a right of way over the railroad as a necessary incident or secondary easement.

A recital in a deed can be relied upon only in an action upon the deed between the parties to it.

In an action against a railroad corporation for the obstruction of an alleged right of way over the railroad, it appeared that the owners of a portion of a tract of land known as the T. land, which fronted on W. Street in a certain city, and ran back southerly therefrom, conveyed, in 1833, a strip of the land to the corporation, reserving to themselves a right of way over the railroad, which they agreed to keep in repair, and which terminated in 1867 by the death of the last survivor of the grantors. From and after the date of that deed, the grantors and their assigns used, during the lives of the grantors, under the reservation in the deed, a farm-crossing over the railroad, and over so much of the original T. land as lay between the railroad and W. Street, to and from W. Street. In 1866, when the plaintiff bought a portion of the T. land, he found planking between the tracks, and gates in the fences on both sides of the railroad. These gates existed at least as late as 1869. The plaintiff, from the date of the deed to him until the planking was removed by the corporation in 1883, used the crossing adversely and under a claim of right, for the purpose of carting dressing on to his land from W. Street, and carting hay from it to W. Street. During the period of his occupancy, there had been no buildings on his land, and the land had been used only as grass land. He did nothing in the way of maintaining the planking, and there was no evidence that the corporation did anything towards it. There had been no planking there since 1883. In 1886, the corporation built, and it has since maintained, a fence along the northerly line of its roadway; and since 1883 there has been no provision for the passage of vehicles across the rails and sleepers of the railroad. *Held*, that the plaintiff had not a right of way over the railroad by prescription.

Where the origin of an easement is known, a lost grant is not to be presumed.

LATHROP, J. This is an action of tort, for the obstruction of an alleged right of way over the defendant's railroad. At the close of the evidence the defendant asked the court to give seven rulings. The court gave three of them, by the consent of the plaintiff, and refused to give the others, and ruled that, upon all the evidence, the jury would be warranted in finding for the plaintiff. The defendant excepted to the refusal to give the rulings which were not given, and to the ruling that the jury would be warranted in finding for the plaintiff. After verdict for the plaintiff, the justice who tried the case in the Superior Court, at the request of the parties, reported the case for the determination of this court. If the rulings were right, the verdict is to stand; otherwise, the verdict is to be set aside, and a new trial granted.

1. On March 5, 1833, Joel Jenison, Lucy Jenison, and Otis Trowbridge conveyed to the Boston and Worcester Railroad

Corporation, the predecessors in title of the defendant, a strip of land sixty-six rods long and forty feet wide, bounded easterly and westerly by other land of the grantee, and northerly and southerly by lands of the grantors. Following the description are the words, " as now staked out by the engineer of said corporation, and partly graded for a railroad, reserving to ourselves the right of passageway over said railroad, which pas-·sageway is to be constructed and kept in repair by ourselves." Then followed an habendum in fee, with full covenants of warranty and seisin.

The land thus conveyed was a portion of a tract of about twenty acres, which fronted on Washington Street in Newton, and ran back southerly therefrom. The entire tract was known as the Trowbridge land. The effect of the conveyance was to cut the land of the grantors in two parts, leaving the southerly part without access to a public way. The last survivor of the grantors died on August 18, 1867. At the request of the defendant, and with the consent of the plaintiff, the court ruled that, under this deed, " a right of way was created across the premises thereby conveyed, for the life of the grantors and the survivor of them, which terminated August 18, 1867, and all use of the right of way by the owners of any part of said premises before that date was under the easement created by that deed, and not adverse."

At the argument of this case the plaintiff admitted that the right of passage was a reservation only for the lives of the grantors and of the last survivor, on account of the omission of the word " heirs." Since the argument, the case of *White* v. *New York & New England Railroad*, 156 Mass. 181, has been . decided, and, at the request of the plaintiff, the parties have been allowed to file supplemental briefs; and the plaintiff now contends that the right of a passageway was an exception in perpetuity, and not a reservation. The effect of the Jenison deed would seem to be open, under the ruling of the court that, upon all the evidence, the jury would be warranted in finding for the plaintiff, and we proceed to consider it.

According to the English law, a right of way cannot strictly be made the subject of an exception or a reservation, because, as stated by Chief Justice Tindal, in *Durham & Sunderland*

*Railway* v. *Walker*, 2 Q. B. 940, 967, " It is neither parcel of
the thing granted, nor is it issuing out of the thing granted,
the former being essential to an exception, and the latter to a
reservation." If, therefore, an easement is excepted or reserved
in a deed, it operates by way of grant from the grantee to the
grantor.   See also *Goold* v. *Great Western Deep Coal Co.* 2 DeG.,
J. & S. 600 ; *Finlinson* v. *Porter*, L. R. 10 Q. B. 188.   In such
a state of the law, the word " heirs " must be used to create an
easement in fee.   In this Commonwealth, however, an easement
may be created by way of exception or reservation. *Bowen*
v. *Conner*, 6 Cush. 132, and cases *infra*.   If created by way of
reservation, the word " heirs " is necessary to create an ease-
ment in fee.   *Ashcroft* v. *Eastern Railroad*, 126 Mass. 196.
*Bean* v. *French*, 140 Mass. 229.   But if created by way of
exception, the word " heirs " is not necessary to create an ease-
ment in fee, if the grantor owned the fee at the time of the
conveyance.   *Wood* v. *Boyd*, 145 Mass. 176.   *White* v. *New
York & New England Railroad*, *ubi supra*.   As an exception
may be created by words of reservation, ( *Wood* v. *Boyd*, *ubi
supra*,) little reliance can be placed upon the language used
in determining whether the right is by way of exception or
by way of reservation.

In *Bean* v. *French*, 140 Mass. 229, one Merrifield, being the
owner of a large tract of land, conveyed a part of it to the plain-
tiff's predecessor in title, by a warranty deed containing the
usual covenants, and also the following clause : " Reserving
however to myself the privilege of a bridle-road in front of the
house." This was held to be a reservation, and not an excep-
tion, on the ground that the effect of the clause was to create
a right or easement not before existing, and the right which
Merrifield had to pass and repass over any part of his estate,
while he owned the whole of it, was held to be not an existing
right of way over that part sold to the plaintiff's predecessor
in title.

In *White* v. *New York & New England Railroad*, *ubi supra*,
where the easement was held to be perpetual, the language was,
" reserving the passageway at grade over said railroad where
now made," and the deed purported to release the railroad from
all damages from maintaining the railroad.   The defendant had

also previously taken the land by its location. In deciding that the right of way was by way of exception, and not by way of reservation, reliance is placed on all these facts, including the fact that the passageway was already existing when the deed was executed.

In the case at bar the defendant had not already taken the land by its location, this not being filed until 1835, and there was no evidence of an existing way across the land. The construction of the deed therefore is determined by *Bean* v. *French, ubi supra,* and the right of way must be taken to have been acquired by way of reservation, and not by way of exception.

2. In 1840 the Trowbridge land, except so much as had been conveyed by the deed above considered, was owned in fee by one Patten. On July 11, 1840, Patten conveyed to the Boston and Worcester Railroad Corporation a strip of land fifteen feet in width, and extending across his land. This strip adjoined the land of the corporation, and was on the south side of it. The deed made no reference to any right of way. On March 28, 1845, Patten conveyed to the same corporation a strip of land on the north side of the railroad, apparently of the same width as that conveyed by the deed of 1840. This deed contained the following clause: " Reserving also to myself and my representatives forever the right of passage to and from the crossings heretofore secured to us and those holding under us over said railroad. It being understood that I herein relinquish all claims for damage of whatever kind against said corporation, their successors and assigns, prior to this date."

The word " crossings " is evidently a clerical error for " crossing," and the crossing referred to is undoubtedly the crossing reserved in the deed from Jenison and others, the right to use which, as we have seen, ceased to exist in 1867 ; and the word "heirs" being omitted, a reservation in fee was not created. *Buffum* v. *Hutchinson,* 1 Allen, 58. *Sedgwick* v. *Laflin,* 10 Allen, 430. *Ashcroft* v. *Eastern Railroad,* 126 Mass. 196. We do not find in the report any evidence that Patten was living when the acts of obstruction complained of were done. If the plaintiff had Patten's rights, these rights would cease on the death of Patten, and the burden of proof was on the plaintiff to show that Patten was living.

3. In 1873 the defendant corporation filed a new location, taking a narrow strip of land lying adjacent to and southerly of the strip conveyed to the corporation by Patten in 1840. The plaintiff was then the owner of the strip taken, and also of land lying southerly of it, the whole being part of the Trowbridge land.

In 1874 the plaintiff conveyed the strip so taken to the defendant, by a deed containing the following words, after the description of the land conveyed: " Reserving to myself and my heirs and assigns a right of way across the tract of land hereby conveyed to the crossing heretofore secured to me over the said railroad to Washington Street."

The defendant does not dispute the right of the plaintiff to cross the strip of land conveyed. The contention of the plaintiff is, that, by the acceptance of this deed, the defendant is estopped to deny his right to cross the railroad, or that a grant of such crossing must be implied.

To work an estoppel, a statement must be particular, clear, and unambiguous. It must be such a declaration as would be evidence by way of admission or otherwise. The recital here does not answer these requirements. Beyond the reservation of a right of way over the strip conveyed, no definite fact is clearly stated, except that a crossing had " heretofore " been conveyed to the plaintiff. This the defendant does not seek to deny. All that it asks to be allowed to show is that the crossing " heretofore secured " to the plaintiff was then no longer secured to him. The language of the deed nowhere sets out an easement in fee belonging to the plaintiff over other land of the defendant. It does not even refer in definite terms to the crossing as an existing right. To allow an estoppel to work in such a case would destroy all distinction between general and particular, indefinite and definite recitals. *Doane* v. *Willcutt*, 16 Gray, 368. *Weed Sewing Machine Co.* v. *Emerson*, 115 Mass. 554. *Jackson* v. *Allen*, 120 Mass. 64, 79.

The mistake which the parties made was in respect to a collateral fact. Their contract in the deed stands just as they made it. That was a grant of a strip of land with a reservation of a right of way through it to a crossing which had previously been secured to the plaintiff, and which, we may assume, both

parties supposed then to exist, but which in fact did not then exist. Their mistake was in regard to the title to the land adjoining that conveyed. This land was referred to merely by way of description, for the purpose of showing in what place the way was reserved in the land then conveyed. That description is in part false, although it sufficiently shows what place is referred to. The description will be used, so far as it is intelligible; and the false part will be rejected. *Doane* v. *Wilcutt, ubi supra*. Nor are we able to see in this deed of 1874 anything that would warrant us in saying that the plaintiff has a right of way by implied grant over the other lands of the defendant.

4. The plaintiff further contends that the reservation, in his deed of 1874 to the plaintiff, of a right of way over the strip conveyed, gave him a right of way over the railroad as a necessary incident or secondary easement. In support of this view he relies upon *Prescott* v. *White*, 21 Pick. 341, *Prescott* v. *Williams*, 5 Met. 429, and *Johnson* v. *Knapp*, 146 Mass. 70.

In *Prescott* v. *White*, a grant of a raceway attached to a mill, and without which the mill could not be worked, where the raceway ran through the grantor's land, was held to carry an implied authority and license to enter upon the land to examine and keep it clear. This was affirmed in *Prescott* v. *Williams*.

In *Johnson* v. *Knapp*, an owner of two lots of land, to one of which was appurtenant a right to draw water from an aqueduct, while the other was supplied with water from the aqueduct through pipes maintained in the former lot, conveyed the latter with no mention of the water or pipes, and it was held that a right to maintain the pipes would be implied.

Other similar cases may be found in Washburn on Easements, (4th ed.) 39, 40. As to a secondary easement being implied from an easement granted, the learned author well remarks, " But after all, instead of these ancillary rights being something appurtenant to easements, they seem rather to constitute an essential part or element of the principal easement itself." We are not prepared to say that a grant of a right of way twenty feet into the grantor's land gives the grantee a right to cross beyond the twenty feet.

5. In 1883 the defendant purchased of one Hills the Trowbridge land lying northerly of the strip conveyed to it by Patten

in 1845, and extending to Washington Street. The plaintiff contends that the defendant, on account of certain reservations relating to the right of way over the railroad contained in this deed, and in the deeds of the predecessors in title of Hills, is estopped to deny the existence of this way. We do not deem it necessary to consider the statements relating to such right of way contained in the various deeds, as it is a well settled principle of law that a recital in a deed can be relied upon only in an action upon the deed between the parties to it. The doctrine of estoppel does not apply to an action not founded on the deed, but wholly collateral to it. *Merrifield* v. *Parritt*, 11 Cush. 590, 598. *Carpenter* v. *Buller*, 8 M. & W. 209, 213. *Carter* v. *Carter*, 3 K. & J. 617, 645. *Fraser* v. *Pendlebury*, 31 L. J. (C. P.) 1. *South Eastern Railway* v. *Warton*, 6 H. & N. 520. *Ex parte Morgan*, 2 Ch. D. 72, 89.

6. The remaining question is whether the plaintiff has a right of way by prescription. It appears from the report, that from and after March 5, 1833, the date of the Jenison deed, the grantors of the original Trowbridge land south of the railroad, and their assigns, used, during the lives of the grantors, under the reservation in that conveyance, a farm-crossing over the railroad, and over so much of the original Trowbridge land as lay between the railroad and Washington Street, to and from Washington Street. At the time of the plaintiff's purchase, in 1866, he found planking between the tracks, and gates in the fences on both sides of the railroad. These gates existed at least as late as 1869. The report states that " the plaintiff, from the date of the said deed to him, until the removal of the planking in 1883, used said crossing adversely and under claim of right, for the purpose of carting dressing on to his land, from Washington Street, and carting hay from it to Washington Street. During the period of his occupancy there have been no buildings on his land, and the land has been used only as grass land. The planking remained until August, 1883. The plaintiff did nothing in the way of maintaining said planking, and there was no evidence that the defendant did anything towards it."

It further appears from the report, that the taking up of the planking in August, 1883, was by the defendant, and that there has been no planking there since ; that in October, 1886, the

defendant built, and that it has since maintained, a fence along the northerly line of its roadway; and that since 1883 there has been no provision for the passage of vehicles across the rails and sleepers of the railroad.

The plaintiff, having failed to show adverse possession for twenty years, relies upon some remarks of Mr. Justice Devens, in delivering the opinion of the court in *Fitchburg Railroad* v. *Frost*, 147 Mass. 118, where it was said that the facts that the railroad company had planked and maintained a crossing of its road by a private way, that the owner of the way had crossed under a claim of right for ten years, and that this right was referred to in certain deeds between the parties, though not in a manner sufficient to give the right, were sufficient to sustain a finding that the defendant had there a right of way which had been previously granted or reserved to him. It is to be noticed that, when that case was argued in this court, the defendant did not seek to maintain a right of way on the ground of a lost grant, but on the ground that the defendant had the right to cross the railroad by adverse user for forty-seven years. And this court held that the evidence was sufficient to entitle the defendant to a verdict on this ground. The remarks relating to a right of way by lost grant were unnecessary to the decision of the case; but we need not consider whether they were correct. In the case at bar the origin of the easement is known, and a lost grant is not to be presumed. *Smith* v. *New York & New England Railroad*, 142 Mass. 21, 23. In *Fitchburg Railroad* v. *Frost*, the chief point relied on by the court was the maintaining of planking at the crossing by the railroad company. In the case at bar, there is no evidence that the defendant maintained the planking, and by the Jenison deed the grantors agreed to do this. It also appears from the report, that the right of crossing from March, 1833, to August, 1867, was under the reservation in the Jenison deed. The case of *Fitchburg Railroad* v. *Frost* is, therefore, clearly distinguishable.

In the case as reported to us, we fail to find any evidence which entitles the plaintiff to maintain his action. The ruling of the court, that upon the whole evidence the jury would be warranted in finding for the plaintiff, was therefore wrong. As this renders a new trial necessary, we need not further consider

the rulings asked for by the defendant, some of which have already been adverted to.

<em>Verdict set aside, and new trial granted.</em>

*S. Hoar & W. Hudson,* for the defendant.

*H. W. Chaplin,* (*C. I. Giddings* with him,) for the plaintiff.