398 Mass. 152 (1986)
496 N.E.2d 141
DANIEL E. McGUIGGAN, administrator,[1]
vs.
NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY; CITY OF PEABODY & others,[2] third-party defendants.
Supreme Judicial Court of Massachusetts, Essex.
April 8, 1986.
August 6, 1986.
Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.
Bartlett Leber Thomas for New England Telephone and Telegraph Company.
Deirdre H. Harris (Richard L. Neumeier & John J. Mahoney with her) for Daniel E. McGuiggan & another, third-party defendants.
WILKINS, J.
We consider, on direct appellate review, whether a social host who furnished alcoholic beverages to an adult guest may be liable for a death caused shortly thereafter by that guest's negligent operation of a motor vehicle while under the influence of alcohol. We conclude that, although in certain circumstances liability properly could be imposed on such a social host, on the facts presented on the social hosts' motion for summary judgment, they are not liable. We, therefore, affirm the separate judgment (see Mass. R. Civ. P. 53 [b], 365 Mass. 820 [1974]) entered in favor of the McGuiggans.
The McGuiggans held a high school graduation party for their eighteen year old son Daniel on June 11, 1978. Perhaps thirty people were present, most of whom were relatives considerably older than Daniel. Four of his contemporaries, including eighteen year old James Magee, were also present. Several people acted as bartender serving alcoholic beverages provided by the McGuiggans at a bar in the cellar playroom, and guests *154 also served themselves. Mr. McGuiggan testified on deposition that he may have given Magee one drink when he arrived, but thereafter did not see him drinking and did not know how many drinks Magee had. He claimed that Magee seemed perfectly normal just before he left their home. Mrs. McGuiggan testified on deposition that she had spoken to Magee before he left with her son and three other young guests to drive David Doherty home. She knew Magee was driving and would have said something to him if she had believed him incapable of driving. Other passengers in the vehicle confirmed that Magee seemed sober.[3] Magee, however, admitted that he had had four or five rum-cokes that evening and that he was "pretty sure" he later pleaded guilty to a charge of operating under the influence.
While traveling with his friends in the vehicle driven by Magee on Lowell Street in Peabody, shortly after leaving the party, Daniel McGuiggan became sick to his stomach and leaned his head and upper body out of a window of the vehicle. Daniel's head apparently struck a cement post which the defendant telephone company maintained inside the curb to mark the location of an underground conduit. Daniel died at a local hospital about four hours later.[4]
*155 Approximately three hours after Magee left the party, a breathalyzer test administered to Magee recorded a value of .140. According to an affidavit of a physician submitted on the summary judgment motion, in the circumstances, a person who registered a.140 value on a breathalyzer test three hours after his last drink would have had a blood alcohol content of between .185 and.215 three hours earlier. Unless tolerant to alcohol, a person with a blood alcohol content over .10 would be recognizably intoxicated, and one with a blood alcohol content of between .185 and .215 would be unmistakably intoxicated. No evidence indicated when Magee ate his dinner or when he took his last drink or how strong it was.
The claim against the McGuiggans is based on common law principles and does not rely in any respect on a statutory violation. Under traditional common law tort analysis, our inquiry is whether a social host violated a duty to an injured third person by serving an alcoholic beverage to a guest whose negligent operation of a motor vehicle, while adversely affected by the alcohol, caused injury to a third person. Such an inquiry would require us to consider whether the social host unreasonably created a risk of injury to a person who the social host should reasonably have foreseen might be injured as a result of the guest's intoxication. If a social host acted negligently in serving an alcoholic beverage to a guest when there was such a foreseeable risk of injury to another and injury resulted from the guest's negligence caused by his intoxication, the law would ordinarily impose liability in tort on the social host, barring some statutory restriction or consideration of public policy weighing against the imposition of a duty in the circumstances.
Although this court has never announced a common law rule on the issue, the traditional view supported by the weight of authority has been that the drinker's voluntary consumption alone is the "proximate" cause of the third party's injury and *156 that a person who sold or gave liquor to an intoxicated adult drinker is not liable for subsequent injuries caused by his intoxication. See Klein v. Raysinger, 504 Pa. 141, 148 (1983), where cases are collected. See also DeLoach v. Mayer Elec. Supply Co., 378 So.2d 733, 735 (Ala. 1979). Contra Nehring v. LaCounte, Mont., (1986) (712 P.2d 1329, 1335 [Mont. 1986]) (abandoning its adherence to this view, court described its past position as a "Neanderthal approach to causation"). Other courts have concluded simply as a matter of policy that the subject of tort liability is best determined by the Legislature. See Boutwell v. Sullivan, 469 So.2d 526, 529 (Miss. 1985); Settlemyer v. Wilmington Veterans Post No. 49, 11 Ohio St.3d 123, 127 (1984). Cf. Holmquist v. Miller, 367 N.W.2d 468, 471-472 (Minn. 1985) (legislative action rendering ineffective prior decisions imposing liability on social hosts requires conclusion that social host not liable at common law).[5]
In the case of licensed vendors, neither the "proximate cause theory" nor the concept of deference to the Legislature has attracted this court's favor. This court has held that a licensed commercial vendor of alcoholic beverages owes a duty to a third person who is injured in a motor vehicle accident caused by the negligence of a customer to whom the vendor sold a drink when he knew or reasonably should have known the customer was intoxicated. Cimino v. Milford Keg, Inc., 385 Mass. 323, 327 (1982). In Adamian v. Three Sons, Inc., 353 *157 Mass. 498, 500 (1968), the court rejected arguments that liability could be imposed only by statute and that the drinker alone would be responsible for the consequences of his intoxication. Grounding liability on common law negligence (see Three Sons, Inc. v. Phoenix Ins. Co., 357 Mass. 271, 275 [1970]), we held that injury to another on the highways was within "the foreseeable risk created by the sale of liquor to an already intoxicated individual." Adamian v. Three Sons, Inc., supra at 501. Although the plaintiff must show that the vendor defendant was on notice that the consumer was intoxicated (Cimino v. Milford Keg, Inc., supra at 328), we do not require specific proof that the vendor knew or reasonably should have known that the intoxicated customer would drive a motor vehicle. Id. at 330-331. The question for the trier of fact is whether the vendor failed "to exercise that degree of care for the safety of travelers that ought to be exercised by a tavern keeper of ordinary prudence in the same or similar circumstances." Id. at 331.
There are, of course, differences between the operation of a commercial establishment selling alcoholic beverages for consumption on the premises and the furnishing of alcoholic beverages to guests in one's home. Balancing these differences, courts have found it easier to impose a duty of care on the licensed operator than on the social host. The threat of tort liability may serve the public purpose of offsetting the commercial operator's financial incentive to encourage drinking. The means of serving beverages in a bar, tavern, or restaurant normally permits closer control and monitoring of customers and their consumption than is typically possible in private gatherings. The commercial vendor may generally (but certainly not always) have more experience in identifying intoxicated drinkers than would social hosts and would be better able to "shut off" consumption without the embarrassment that a social host would suffer. It has also been suggested that licensed operators can be expected to have insurance against loss whereas a private individual would not. Some courts have regarded these various differences sufficient to justify imposing a duty on licensed vendors but not on social hosts. See, e.g., *158 Harriman v. Smith, 697 S.W.2d 219, 221 (Mo. Ct. App. 1985); Settlemyer v. Wilmington Veterans Post No. 49, 11 Ohio St.3d 123, 127 (1984). Others have considered the distinctions insignificant in assessing whether a duty should be imposed, although the differences might have a bearing on whether particular conduct was negligent. See Coulter v. Superior Court, 21 Cal.3d 144, 155 (1978); Kelly v. Gwinnell, 96 N.J. 538, 547-548 (1984); Koback v. Crook, 123 Wis.2d 259, 267-268 (1985). See also Note, Common Law Negligence Theory of Social Host Liability for Serving Alcohol to Obviously Intoxicated Guests, 26 B.C.L. Rev. 1249, 1271-1272 (1985).
A line of cases, most of which rely on statutory violations, imposes social host liability for the adverse consequences of serving alcoholic beverages to a minor. See, e.g., Sutter v. Hutchings, 254 Ga. 194, 198 (1985) (common law claim stated against social hosts who furnished beer to noticeably intoxicated seventeen year old); Brattain v. Herron, 159 Ind. App. 663, 676 (1974) (violation of statute in knowingly giving liquor in defendant's home to minor who would be driving is negligence per se); Longstreth v. Gensel, 423 Mich. 675, 694-695 (1985) (claim stated against social hosts who allegedly violated statute in knowingly furnishing alcoholic beverage to minor who died in automobile accident); Walker v. Key, 101 N.M. 631, 635 (Ct. App. 1984) (violation of statute forbidding furnishing alcoholic beverages to minor warrants claim against social host for injury to third person); Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity, 258 Or. 632, 643 (1971) (claim properly alleged by passenger against fraternity which served alcoholic drinks to minor when it should have known he would be driving motor vehicle);[6]Congini v. Portersville Valve Co., 504 Pa. 157, 162-163 (1983) (defendants *159 who furnished liquor to minor to point of intoxication violated statute, were negligent per se, and may be liable for injuries minor thereafter sustained in operating motor vehicle); Koback v. Crook, supra at 265-266 (social hosts, negligent per se for serving a minor in violation of statute, may be liable to third party injured by minor, where the consumption of alcohol was cause of third party's injury). Contra Harriman v. Smith, supra at 222-223 (no liability of social hosts for injuries caused to third person by intoxicated minor guest).[7]
There are a few cases which have imposed social host liability when, as here, the intoxicated guest who operated a motor vehicle was an adult. In Coulter v. Superior Court, 21 Cal.3d 144, 149-150 (1978), the Supreme Court of California concluded, on both statutory and common law grounds, that "a social host or other noncommercial provider of alcoholic beverages owes to the general public a duty to refuse to furnish such beverages to an obviously intoxicated person if, under the circumstances, such person thereby constitutes a reasonably foreseeable danger or risk of injury to third persons."[8] The "social hosts" in the Coulter case were the owner-operator and the manager of an apartment complex alleged to have served a guest (apparently an adult) large quantities of alcoholic beverages when they knew or should have known that she was becoming "excessively intoxicated," that she customarily drank to excess, and that she would be driving a motor vehicle. Id. at 148.
On purely common law grounds, the Supreme Court of New Jersey held that a social host who serves liquor to an adult *160 guest, "knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle, is liable for injuries inflicted on a third party as a result of the negligent operation of a motor vehicle by the adult guest when such negligence is caused by the intoxication." Kelly v. Gwinnell, 96 N.J. 538, 548 (1984). The court emphasized that it was passing on the duty of a social host who "directly serves the guest and continues to do so even after the guest is visibly intoxicated." Id. at 556. Recently, the Supreme Court of Iowa ruled that a claim was properly alleged against a social host where the host "was actually aware the guest was intoxicated" and then, in violation of a statute, made intoxicating beverages available to her which she drank before operating a motor vehicle, causing injury to the plaintiffs. Clark v. Mincks, 364 N.W.2d 226, 231 (Iowa 1985). The court relied in part on the violation of an Iowa statute providing that no person shall give (or sell or dispense) intoxicants to an intoxicated person. Id. See Ashlock v. Norris, 475 N.E.2d 1167, 1169 (Ind. Ct. App. 1985) (claim stated against person who purchased drinks for an obviously intoxicated person at a lounge in violation of statute forbidding giving alcoholic beverage to a person known to be intoxicated). See also Langle v. Kurkul, 146 Vt. 153 (1986), for a case in which a majority of the court were unwilling to recognize a claim of social host liability where the inebriate was not a minor and the plaintiff's injury was not sustained in a motor vehicle accident.
The paucity of cases in this country imposing social host liability cannot be explained solely on the ground that a social host does not, as a matter of law, create a reasonably foreseeable risk of harm to highway travelers in serving an alcoholic drink to a drunken guest. The risk created by serving liquor to an intoxicated person who is about to operate a motor vehicle is far too apparent to permit the conclusion that the social host's act could not have been the "proximate" cause of a third person's injury. The reluctance of courts to impose liability in these circumstances has been founded, rightly or wrongly, on policy considerations, particularly consideration of the effect that a rule of social host liability would have on a multitude of personal relationships in a variety of social settings.
*161 Virtually every case we have discussed in which social host liability was acknowledged as a possibility or as a fact has been decided in the past decade. This trend toward imposing liability is no doubt a response to the greater concern of society in recent years regarding the problems of drunken driving. It is understandable that the law of torts, which in many aspects measures one's duty by what is reasonable conduct in the circumstances, should begin to respond to society's increasing concern. But the problems and implications of imposing liability are extensive, prompting some courts to abandon the field entirely to their Legislatures. These concerns also explain why more cases impose liability for serving a minor than for serving an adult. It is easier to find a violation of a standard of reasonableness when the intoxicated guest is underage, a person to whom, generally in this country, it is thought to be wrong to furnish an alcoholic drink. Similarly, those cases which have recognized the liability of social hosts for serving adult guests have involved the most flagrant circumstances calling for liability, a defendant furnishing an alcoholic drink directly to a person who was obviously intoxicated.[9]
Cases of this character must be decided one by one, applying common law principles. The facts here do not present a case for social host liability. There is no evidence that either of the McGuiggans knew that Magee was intoxicated at any time while he was at their home. Nor does the evidence show that Magee was obviously intoxicated at any relevant time. There is evidence, admittedly from the McGuiggans and from Magee's sister and friends, which tends to show that Magee was not obviously intoxicated that evening. We pass by the question whether a social host may avoid liability by letting his guests serve drinks to themselves and each other. The crucial consideration has been the condition of the guest (or customer) at the time the social host (or licensee) served him or her an alcoholic drink. Where, on this record, there is no *162 showing that the McGuiggans knew Magee was intoxicated and there is a showing that he was not obviously intoxicated at any time that night (thus including the time when he served himself or was served his last drink), there is no case for liability.
We would recognize a social host's liability to a person injured by an intoxicated guest's negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person's injury. In deciding whether the social host exercised ordinary prudence in such circumstances, a relevant consideration will be whether the social host knew or reasonably should have known that the intoxicated guest might presently operate a motor vehicle.
Inherent in what we have said is a rejection of the claim that evidence of Magee's blood alcohol content raises a dispute on a material factual issue. The doctor's affidavit might be thought to raise a factual dispute as to what Magee's apparent condition was just before he left the McGuiggans' home. That evidence, however, has no bearing on what Magee's apparent condition was at the time he took his last drink.[10] We need only say that the record does not raise a dispute on any material fact concerning what the McGuiggans knew or reasonably should have known about Magee's sobriety at any relevant time.
Judgment affirmed.
*163 LYNCH, J. (concurring).
I concur in the result. I would prefer to determine the circumstances, if any, which would impose liability on a social host for furnishing alcoholic beverages to a guest in the traditional manner, when we are confronted with facts which the court concludes result in such liability. I, therefore, cannot agree with the dictum of the opinion which declares when such liability would attach. Since the court has expressed views beyond those necessary to resolve the issues in this case I will respond to those views.
I would follow the traditional view, alluded to by the majority, ante at 155-156, that the drinker's consumption of alcohol alone is the proximate cause of injuries to third parties. I accept this view out of concern for judicial restraint and not because of any lack of concern with the problem of drunken driving. Sorting out the conflicting social policies involved in imposing liability in such circumstances cries out for a legislative rather than a judicial solution. There are several reasons not to modify the traditional common law rule but to await a legislative solution.
First, in determining when a host should have known his guest was intoxicated and unable to drive safely a jury are, after all, acting as the paradigm of the "Monday morning quarterback." Not only does the jury decide what facts were "known" to the host but they have the ability to analyze the host's conduct in the light of the subsequent, sometimes tragic, events. Furthermore, we cannot ignore that juries are sometimes influenced by sympathy for the injured party or other irrelevant factors in imposing liability.
Second, the court should take note that the General Court has recently limited the amount that may be recovered by victims of medical malpractice in an attempt to solve what it perceives as a crisis in the medical profession brought about by the burgeoning cost of malpractice insurance. St. 1986, c. 351. The Legislature has acted to restrict recovery by injured litigants in order to limit the expense of practicing medicine. Here, this court suggests, however, that it will impose liability where none has existed before. A social host is by definition not in a commercial setting where furnishers of goods or services *164 can protect themselves from the catastrophic effects of liability by obtaining adequate insurance. The homeowners of the Commonwealth are already sorely burdened and their ability to protect themselves from catastrophic loss may be limited to restricting the activities that are permitted on their property. The Supreme Court of the United States recently held that certain kinds of private, aberrant sexual acts are beyond the bounds of constitutional protection. Bowers v. Hardwick, 478 U.S. 186 (1986). I suggest that the views of the court expressed here will have a far more pervasive effect on the private activities of consenting adults than that highly criticized decision.
Third, the majority is responding to a serious problem in modern society, but is doing so without the consideration of aspects of the problem that would be appropriate for the Legislature to examine. For example, is it necessary, or desirable, to expose to liability the equity in the home or perhaps the entire life savings of citizens of the Commonwealth who do nothing more than make available alcoholic beverages to social guests whom a jury later determines that the host should have known were intoxicated and would drive? Is the social guest a statistically significant contributor to highway accidents in which alcohol is a factor? After all, social activities themselves usually impose constraints on extreme behavior. Moreover, can a homeowner (who is not in the business of serving alcohol) be expected to recognize when a guest is approaching his individual "limit," and, in what circumstances should a host be charged with knowledge that his guest would drive? What action, if any, might protect the host from liability when he learns that his guest, now perceived to be under the influence, intends to drive? To what extent, if any, should the reasonable availability of insurance affect the policy decision to impose liability?
One other matter requires some comment. A subtle message attaches to the rule of liability proposed by the court. Imposing liability on the host partially excuses the drunken driver from the consequences of his own acts. Instead of placing all of society's opprobrium on the individual who makes the free *165 choice of both drinking too much and then driving, the rule advanced by the court divides that opprobrium and thus defuses it. I suggest that this is not the message that we wish to send to those who make the decision to drink to excess and then drive.
NOTES
[1] Of the estate of Daniel S. McGuiggan.
[2] The New England Telephone and Telegraph Company as a third-party plaintiff filed a third-party complaint against the city of Peabody; James J. Magee, the operator of the vehicle in which the decedent was a passenger; Jerold L. Berger, the vehicle's owner, and Daniel E. and Ruth J. McGuiggan, the parents of the decedent, Daniel S. McGuiggan.
[3] Doherty said on deposition that Magee acted normally in driving the vehicle; he seemed steady; and his speech sounded fine. Gina Magee, James Magee's sister, testified on deposition that her brother operated the vehicle in a regular way; his speech was fine; and at no time that evening was he under the influence of alcohol. Elisa Berger, whose father owned the vehicle which Magee drove, did not know how much Magee drank that evening but did say he ate a full dinner.
[4] There was evidence that Daniel had also been drinking rum-cokes that evening, that he had been sick before he entered the vehicle, and that his mother had not been watching him as closely as she usually had. The telephone company's claim here is based on the McGuiggans' liability to Daniel's estate for serving alcoholic drinks to Magee and is not based on their serving alcoholic drinks to their son, causing him negligently to extend his upper body out of a moving motor vehicle at night. There are cases holding a social host liable to an inebriated guest who was the victim of his own alcohol-induced negligence. See, e.g., Longstreth v. Gensel, 423 Mich. 675 (1985) (minor guest); Congini v. Portersville Valve Co., 504 Pa. 157, 162-163 (1983) (minor guest). The Appeals Court has held that an inebriated customer of a bar might recover for injuries he sustained after the bartender served the customer when he knew or should have known the customer was intoxicated. O'Hanley v. Ninety-Nine, Inc., 12 Mass. App. Ct. 64, 69 (1981). By St. 1985, c. 223, § 18, the Legislature added to G.L.c. 231, a second § 85S, which prospectively limits the liability of a licensee (or entity serving alcohol as an incident to its business) in such circumstances to "wilful, wanton, or reckless conduct" on the licensee's part.
[5] We acknowledge that the Legislature generally may establish, limit, or bar a social host's liability for injuries caused by the alcohol-induced negligent conduct of a guest to whom the host served an alcoholic beverage. Barring a controlling statute, however, the subject is one to which this court may properly apply common law principles. See Soule v. Massachusetts Elec. Co., 378 Mass. 177, 185 (1979).

The subject of drunken driving has received substantial legislative attention in recent years. See, e.g., St. 1985, c. 223, concerning the provision of "liquor legal liability" insurance to commercial vendors and related matters; the amendments to G.L.c. 90, by St. 1982, c. 373, §§ 1-15; St. 1984, c. 312, § 5, amending G.L.c. 138, § 34, to raise the legal drinking age to twenty-one. We see no implication in this recent legislation that the Legislature has preempted the field so as to exclude our traditional common law role in this case. See, however, G.L.c. 231, § 85S (n. 4 above), as to injuries to the intoxicated plaintiff himself.
[6] In 1979 Oregon enacted a statute imposing liability on private hosts who serve or provide alcoholic beverages to a "visibly" intoxicated social guest. 1979 Or. Laws c. 801, § 2, codified at Or. Rev. Stat. § 30.955 (1985). We favor a reference to obviously intoxicated persons over a reference to visibly intoxicated persons. A person's speech can be a factor in assessing his or her sobriety.
[7] The legal drinking age at the relevant time in this case was eighteen. See G.L.c. 138, § 34, as amended through St. 1977, c. 929, § 14. The legal drinking age is now twenty-one. See G.L.c. 138, § 34, as amended through St. 1984, c. 312, § 5. In deciding whether a guest was a minor or an adult, for purposes of determining the tort liability of a social host, the legal drinking age under the law at the time the alcoholic beverages are served is the appropriate consideration.
[8] The California Legislature rather promptly adopted statutory provisions rejecting the concept of social host liability expressed in the Coulter opinion. Cal. Bus. & Prof. Code § 25602 (b), (c) (West 1985); Cal. Civ. Code § 1714 (b) (West 1985).
[9] Coulter v. Superior Court, 21 Cal.3d 144, 148 (1978), discussed above, may be an exception, although it was asserted that the defendants knew the plaintiff "customarily drank to excess."
[10] The implication of the affidavit is in effect that, with full knowledge of the facts and without objection, the McGuiggans permitted their son to leave in a motor vehicle operated by a markedly intoxicated eighteen year old.

For the purposes of our discussion we assume that the affidavit, which is generalized, presents an opinion that would be admissible at trial and thus should be considered in deciding whether summary judgment should be entered for the McGuiggans. The doctor's opinion does not deal, however, with specific circumstances such as when Magee consumed his drinks or when Magee ate his dinner.