*Opinion by Judd, J., holding the Court, on motion for new trial.**

### JOHN H. CONEY vs. JAMES I. DOWSETT.

IN THE construction of certain leases, a covenant that "the lessee's cattle should not be molested if they went on the land of H."; HELD to intend not a lease of H., but a license, and if there is an ambiguity in the leases, then such construction must prevail as is most strong against the lessor.

Verdict of the jury set aside where the amount of the damage is so clearly excessive as to lead to the inference that the jury based their assessment of damage on some erroneous principle.

This is an action in which $10,000 are claimed as damages for the trespass of the defendant's cattle upon the land Honouliuli, in Ewa, Oahu, the property of the plaintiff, since October 16th, 1875.

The jury returned a verdict for the plaintiff of $200, and a motion is made to set aside this verdict and grant a new trial, on the ground that the jury must have mistaken or disregarded the instructions of the Court on the effect of

*Adopted by the Court in Banco, see page 747.

certain leases under which the defendant justified, or that the jury misunderstood the evidence.

The first lease in question is dated March 3d, 1846, and, running for twenty-five years from the 1st of February of that year, expired on the 1st of February, 1871. It demises to John Meek and his heirs, the *kula* land at Lihue, and the privilege that his cattle should be undisturbed at Honouliuli, if they should go there.

The second lease is dated 15th of July, 1851, and leases to John Meek and his heirs and assigns the land called Waimanalo, at Honouliuli, particularly as follows: The *kula* and the *kuahiwi* and the rights appertaining thereto, and the *Poalimas*, the river with all the rights appertaining thereto. It gives the boundaries as follows: On the *mauka* side the lands previously leased to John Meek, that is, the *kula* of Lihue and the *kula* of Honouliuli; on the *makai* sides Nanakuli and the Koolina. This lease expired on the 5th of July, 1876.

The third lease is dated the 16th of February, 1853, and it being for twenty-five years, does not expire until the 16th of February, 1878. By this lease there is conveyed to John Meek, his heirs and assigns, all the remaining portions of the lessor's *kula* land at Honouliuli; this being explained as follows: All parts of *kula* land not included in the previous leases made between A. Keliiahonui, M. Kekauonohi and Jno. Meek for that land called Lihue, on the 3d of March, 1846, and another lease between J. H. L. Haalelea and John Meek, of all that land called Waimanalo, on the 15th of July, 1851, the rents of these two lands shall continue and their lease, until the expiration thereof, they are not included in this lease. Before considering the reservations, which are made at length and with considerable particularity,—

Let us go on to the fourth lease, which is dated the 1st of February, 1871, and which conveys all of that certain piece

or parcel of land situated in the Ahupuaa of Honouliuli, district of Ewa, Island of Oahu, known as the Ili of Lihue, for seven years, and which will not expire until the 1st of February, 1878.

The plaintiff claims that lease No. 1 conveyed not only Lihue but a portion of the *kula* of Honouliuli, and builds up an argument in support of this from the words of description of Waimanalo, above given, in which the *mauka* boundary of Waimanalo is stated to be the *kula* of Lihue, and the *kula* of Honouliuli, and that the portion of Honouliuli conveyed by the first lease and not included in the third lease, was not covered by the fourth lease, which was a lease of the Ili of Lihue only. The plaintiff claims that as there was abundant evidence that the defendant's cattle pastured upon this tract of land within the dates in which this trespass is laid, the award of the jury of $200 is far from excessive and should be sustained. But can this position of the plaintiff be sustained?

The first lease conveyed only Lihue, the lessor covenanted in addition that the lessee's cattle should be undisturbed on Honouliuli, if they went there. This does not lease any portion of Honouliuli outside of Lihue, but only protected the lessee from being held liable for trespass if his cattle strayed on Honouliuli. This view is strengthened by the wording of lease No. 3, made in 1853, which shows the interpretation put by the parties on their previous leases after seven years of dealings with each other as landlord and tenant. This lease No. 3 distinctly says that the lease of 1846 was for that land called Lihue, and that the lease of 1851 was for that land called Waimanalo. Now, as this lease No. 3 conveyed all parts of the kula of Honouliuli, not included in leases No. 1 and 2, it conveys all of Honouliuli except Lihue and Waimanalo and the reservations.

In a former case between the parties to this suit, the Court held that if there exists an ambiguity in the lease then such

construction must prevail as is most strong against the covenantor, for he might have expressed himself more clearly. But there is no ambiguity here, except, perhaps, the exemption from liability for trespass on Honouliuli, and upon the principle just stated it must be construed to be a mere license, the actual territory over which the license was granted in lease No. 1 being leased by indenture No. 3.

Waimanalo is described in the second lease as being bounded on the *mauka* side by the *kula* of Lihue and of Honouliuli. This cannot be explained except upon the theory that its extent was not at that time well defined.

It is clear that the plaintiff does not claim now that Waimanalo stretches up to Lihue, and I am inclined to read the description in this way. The land previously leased to John Meek, that is the *kula* of Lihue and the *kula* of Honouliuli on the *mauka* side. Certainly, if Waimanalo is an Ili at one end of Honouliuli, it must have for one boundary the main body of the land of Honouliuli, where it joins the same. The clause and the *kula* of Honouliuli, is not necessarily modified by the clause the land leased to John Meek.

It is claimed further by the plaintiff that as the lease of Waimanalo particularizes *kula* and *kuahiwi* as being two distinct classes of land, the *kula* being low land and *kuahiwi* being mountain land, and as the third lease does not mention specifically the *kuahiwi* of Honouliuli, it must be considered as intended to be excluded.

I am of the opinion that in this lease No. 3, *kula* means land not *kalo* land; however this may be, the *kuahiwi* is not excepted in the large number of reservations made, and although the lease does not convey the right to actually take the wood in the *kuahiwi*, it leases the right of pasturage therein, for the *kuahiwi* is a part of "keia aina kula i komo ole iloko o na hoolimalima mua," (this *kula* land not included in the previous leases). To lease the whole of a *kula* land, reserving certain specific portions and then to say that this

does not cover *kuahiwi* or *pali, puu, mauna, awaawa* or other portions of land to which various topographical terms may be applied, is so manifestly contrary to the intention of the parties as gathered from all these instruments as not to be countenanced by the Court. I observe, in passing, that if the defendant is now liable for trespass upon the *kuahiwi* of Honouliuli or upon the portion of the *kula* of Honouliuli claimed by the plaintiff's counsel to be not conveyed by lease No. 3, he was liable for trespass for the same reasons on the 1st of February, 1871, the date when the first lease of Lihue expired.

I find therefore that as there was no part of the Honouliuli *kula* between Lihue and Waimanalo not covered by the leases to the defendant, the jury were not at liberty to consider in making up their verdict the evidence of the trespass of defendant's cattle on this territory.

The lease of Waimanalo having expired on the 15th of July, 1876, the jury were instructed that the defendant should be allowed a reasonable time after this date in which to take his cattle off from this land, and in which to restrain them from returning thither. The evidence of damages for trespass on Waimanalo by Dowsett's cattle since the lease expired, consists in statements of witnesses that they had seen his cattle on this land within the month past, and since the time when they were driven off by Dowsett's men. The particular evidence was given by Po, who testified that he saw nine head there on the 20th of July, and sixteen head there on the 10th of August, but this witness was uncertain as to the boundaries of Waimanalo, and said they had never been pointed out to him.

When the testimony of Mr. J. H. Wood is considered, who testifies that Waimanalo is worth nothing for pasturage at present, as there is nothing green on it, it is clear that the amount of $200, if awarded for damage for trespass on this land, is excessive, for if the jury found that defendant's cattle

were allowed to remain on this land an unreasonable time after the lease expired, the damage awarded should have been but nominal and not beyond the statutory amount of 12½ cents for each animal.

The reservations in lease No. 3 are as follows: "These are the places reserved to the party of the first part; the fish ponds in said *kula* land, having fish in them, and two lots intended to be enclosed hereafter; also Mokumeha adjoining the enclosed *taro* lands; and also that piece between Kualakai and C. W. Vincent's lot; that place known as 'Kapauhi' is also reserved; the sea fishery and its rights are also reserved, similar to the Waimanalo sea-right reservation; also the 'Paaina' at Honouliuli and the said enclosure; and also the cultivatable land at Poupouwela; all of which are reserved and not included in this lease, but John Meek's cattle shall not be molested should they go on to these places reserved if not fenced in with a fence sufficient to prevent cattle from trespassing. Poupouwela will still remain as in times gone by, and is not intended to be fenced in as its situation is good, not needing a fence. The tabued woods of the mountains of the lands mentioned in this lease are also reserved to the party of the first part, but he, John Meek, can take said tabued wood for his own use, as much as he wishes, but not to dispose of to other parties."

The clause, "but John Meek's cattle shall not be molested should they go on to these places reserved, if not fenced in with a fence sufficient to prevent cattle from trespassing," fixes the obligation upon the lessor to keep his reservations fenced, and as there was no evidence offered to the jury to show that this was done, they were not at liberty to found their verdict upon evidence that the cattle of defendant were accustomed to graze and get water on the reserved portions. It is urged that though the lessor covenants that the cattle shall not be considered as trespassing if they shall go on the reserved portions, unless fenced, still the evidence shows that

the cattle were continually on one of these portions, that is "Paaina," for water, and that this is in excess of the license, and therefore trespass would lie. I am of the opinion this is not sound, for there could be no trespass on "Paaina," unless fenced with a fence capable of turning stock.

The law will not allow a pit-fall for the unwary to be thus dug, when it was possible, in framing the lease, to make the intention of the lessor to hold his tenant to such a liability more clear.

As regards Poupouwela, its *aina mahiai* is reserved. This is translated cultivated or cultivatable land. Which ever rendering is taken there is no evidence that Dowsett's cattle trespassed upon either the cultivated land or the land capable of cultivation in Poupouwela. The evidence was confined to the statement that the cattle driven from Waimanalo between the 11th and 18th of July were driven from Lihue to water at Poupouwela and back again, but there was no evidence that this water was in the limits of the *aina mahiai*. I am of the opinion, though the jury were not so instructed, that no trespass could be maintained even on the *aina mahiai* of Poupouwela, as the clause in reference to immunity from trespassing applies to it, and the lessor disavows his intention of fencing it, as the situation of the land did not require it. The legal inference from this is, that he took the risk of cattle trespassing on it, though unfenced.

The jury were instructed in regard to the testimony that the cattle of defendant had spread a thorny acacia over the land, as follows: That the plaintiff could not recover damages for this if done while the cattle were lawfully upon the plaintiff's land, for he must be held to have foreseen the natural result of the pasturage of cattle in disseminating weeds and thorns on his lands when he made the lease; and as regards acacia being spread on Waimanalo, the defendant could only be held liable for whatever damage was thus done since July 15th, 1876, of which there was no distinct evidence.

The Court charged the jury that up to the 15th of July, 1876, when the Waimanalo lease expired, the defendant had the right of exclusive possession of all Honouliuli except the reserved portions, but on suggestion of plaintiff's counsel made the qualification that if the jury found that there was any portion of Honouliuli conveyed by lease No. 1 and not included in lease No. 3 and not re-conveyed by lease No. 4, they might find that trespass was committed on such portion. In giving this modification the Court had no intention of allowing the jury to infer that there was any such unleased portion of Honouliuli, for it had charged the contrary. But this may have misled the jury, which is to be regretted.

It is apparent to me that the jury must have understood the instructions of the Court upon the evidence of trespass upon any portion of Honouliuli, except Waimanalo, and as to Waimanalo, if the verdict was founded upon trespass on this land, the amount of damage is so clearly excessive as to lead to the inference that the jury based their assessment of damage on some erroneous principle.

Exercising the sound and legal discretion vested in me, I am of the opinion that the verdict should be set aside and a new trial granted, which is done accordingly.

A. FRANCIS JUDD,

Justice Supreme Court.

L. McCully and E. Preston for plaintiff.

A. S. Hartwell and W. C. Jones for defendant.

Honolulu, October 23d, 1876.

---

SUPREME COURT IN BANCO—OCTOBER TERM, 1876.

*Allen, Ch. J., Harris and Judd, J. J.*

On exceptions to the decision of Mr. Justice JUDD.

The question upon which the opinion of the full Court is desired, is the construction of the leases on file in this case.

The arguments of the counsel for the plaintiff are exceedingly ingenious, and we have given them full consideration. We have likewise reviewed and weighed the opinion given by Mr. Justice JUDD, which is excepted to, and we concur in that opinion fully, seeing no reason for altering, amending or expanding it.

The jury will be instructed in accordance with this opinion, in case a new trial is proceeded with.

Honolulu, December 29th, 1876.