## H. TSUNODA *v.* YOUNG SUN KOW.

### No. 984.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

HON. C. W. ASHFORD, JUDGE.

ARGUED MARCH 1, 1917.          DECIDED MARCH 29, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

LANDLORD AND TENANT—*lease—construction.*

A lease, like any other contract, is to be construed so as to give effect to the intention of the parties and to every part of the instrument if possible, especially to conditions expressed therein.

SAME—*same—words and phrases.*

No particular form of words is necessary to constitute a lease. Any language which shows the intention of the parties that the lessor will surrender his property and the lessee will take it for a specified term and upon stated conditions is sufficient.

SAME—*same—appurtenances.*

A lease demised to the defendant four parcels of land on one of which was an artesian well; in the premises of the lease nothing was said about the privileges and appurtenances, while the habendum read "To have and to hold" with all "privileges and appurtenances," followed by a stipulation that the defendant should have the right to use as much of the water from such well as should be necessary for the proper irrigation of the lands demised to him, it being shown that one-third of the water from

Opinion of the Court.

the well is and for three years last past had been sufficient for the proper irrigation of the lands demised to the defendant and that the surplus (two-thirds) of the water from the well had been used in the necessary irrigation of adjacent lands: Held, that such surplus water was excluded from the operation of the lease to the defendant and did not pass to him as an incident necessary to the use of the lands demised.

OPINION OF THE COURT BY QUARLES, J.
(Robertson, C.J., dissenting.)

The plaintiff, appellant, filed his bill of complaint October 14, 1916, praying that the defendant show cause why he should not be enjoined and restrained from diverting certain waters from the lands of the plaintiff; that a temporary injunction issue; and that on final hearing the injunction be made perpetual. It is alleged in the bill of complaint that the Chinese Y. M. C. A., a domestic corporation, owns four certain tracts of land therein described containing 3.88 acres, upon one of which is an artesian well flowing 170,000 gallons of water every twenty-four hours; that said corporation on June 13, 1916, leased to the defendant for a term of five years commencing July 1, 1916, the said four tracts of land together with so much water from said artesian well as should be necessary for the purpose of irrigating the said lands so demised to the defendant and for his domestic purposes; that said corporation did, September 21, 1916, lease to the plaintiff's assignor all the water flowing from said well except such as should be necessary for the irrigation of the lands demised to the defendant and for his domestic purposes at an annual rental of $65 per year; that plaintiff is a sugar planter and possessed of eight acres of land adjacent to the said lands demised to the defendant, upon six acres of which he has growing cane fourteen months old, the other two acres being prepared and ready to plant to cane; that for

the three years immediately last past he has by arrangement with the owner and controller of the said artesian well received from its flow of water sufficient water for the necessary irrigation of his cane; that the only source of water supply for plaintiff's growing cane is the water from the said artesian well, without which his crop would be destroyed to his irreparable damage; that for the three years last past and now one-third of the water flowing from the said well has been and is more than enough to properly irrigate the lands demised to the defendant and for his domestic purposes; that the usual, customary and only course and channel through which plaintiff has derived and received his water from said well has been through a certain ditch through which the defendant also receives his water in part; that the defendant has with force and arms from the 1st day of September, 1916, to the present time, prevented the plaintiff from taking any of the water flowing from the said well and has caused all of the water to flow on the lands demised to the defendant, and that two-thirds of said water has flowed into a storm sewer and been wasted and lost; that the defendant has no property to respond to a judgment for damages caused by said wrongful acts; that plaintiff has no adequate remedy at law, etc. To the bill of complaint are annexed and made parts thereof copies of the lease from said corporation to the defendant and from it to the plaintiff. In the premises of the lease to the defendant the lessor demises to the lessee the said four tracts of land, describing them, reserving a small tract, but without saying anything about privileges and appurtenances, while the habendum reads: "TO HAVE AND TO HOLD the above described premises, together with all rights, easements, privileges and appurtenances unto the lessee" etc. Then follows the covenant for the peaceable possession by the lessee; and the lessee covenants to pay the rent; to pay all taxes assessed against buildings

erected by him and crops grown by him and to keep the premises in repair and comply with regulations of the board of health; to not make or suffer waste or unlawful use of the premises; to not assign the lease nor underlet the premises without the written consent of the lessor; to continuously cultivate the said lands in taro or other crop suitable to be raised on the premises; to keep the well clear of weeds and in good repair and condition; to not sell or permit water to be taken from said artesian well without the written consent of the lessor; to quietly surrender the premises at the end of his term. Then follows the stipulation: "IT IS HEREBY MUTUALLY AGREED by the parties herein, that the said lessee have the right to use as much water of the said artesian well on the lands hereby demised as shall be necessary for the purpose of irrigating the lands and for domestic purposes." Upon the filing of the bill of complaint summons, containing an order requiring the defendant to appear and show cause why a temporary injunction should not be granted restraining him from interfering with the use by plaintiff of the water claimed by him from said well, issued and was served upon the defendant. To the order to show cause the defendant appeared and filed a response, signed and sworn to by him, in which he claimed the right under his lease "to use as much water from the artesian well on the lands demised by the said lease as may or shall be necessary for the purpose of irrigating the said lands and for domestic purposes." In the return it is alleged: "That the rights of the plaintiff to any water from said well are subject to the prior right of the respondent herein as hereinabove set forth and more particularly appears by the written indenture of lease dated September 21, 1916, a copy of which is attached to plaintiff's bill of complaint, marked exhibit 'Z' which is referred to and made a part hereof." The defendant then claimed in his return that all of the water flowing from the said

well was necessary for the proper cultivation of the lands demised to him and for his domestic purposes. The return was filed October 19, 1916. The record before us does not show what disposition was made of the order to show cause, but after the return day thereof and on or about October 23, 1916, the defendant filed a demurrer to the bill of complaint upon the grounds (1) that the bill does not state facts sufficient to warrant relief in equity against respondent; (2) that there is no equity in the bill; (3) that it appears from the bill and exhibits that complainant has no ground or cause for equitable relief; and (4) "that it appears by exhibit 'Y' attached to said bill of complaint that respondent's lessor, to wit, The Chinese Young Men's Christian Association, reserved therein no right to sell or dispose of any water flowing from the artesian well described in said bill or any surplus of water therein to any person or persons other than respondent herein, or that the said lessor reserved to itself any water or surplus in said well either for its own use or for the use of any person other than respondent herein." The circuit judge sustained the demurrer to the bill and made a decree dismissing the bill of complaint from which the plaintiff has appealed.

A correct determination of this appeal requires a construction of the lease from the lessor to the defendant. In case of conflict between the premises of a deed and the habendum the former controls. A lease, like any other contract, is to be construed so as to give effect to the intention of the parties without regard to the refinements of technical distinctions and the entire lease is to be construed and if possible effect given to every part of it, and this is especially true as to conditions expressed. The lease in question should not be given any more effect than the parties intended that it should have. No particular form of words is necessary to constitute a lease. Any language which shows the intention of the parties that the lessor will sur-

render his property and the lessee will take it for a specified term and upon stated conditions is sufficient. 1 Taylor's Landlord and Tenant, 8 ed. Sec. 159. The same learned author in section 273 says: "The intention of the party to the instrument, when clearly ascertained, will, of course, always control; but conditions and limitations are not to be raised by mere inference or argument. The distinctions on this subject which are to be found in the books are very subtle and artificial; and the construction of any contract will, after all, depend less upon artificial rules than upon the application of good sense and sound equity to the object and spirit of the contract in each particular case." The learned author there cites 4 Kent Com. 132, which fully supports the text. In the lease under consideration the parties have expressly agreed that the defendant should have as much of the water flowing from the artesian well as should be necessary for the irrigation of the lands demised to him and for his domestic purposes. Under the rule *expressio unius est exclusio alterius* the surplus water from the well, that is, all above the amount necessary for the irrigation of the lands demised to the defendant and for his domestic purposes, was excluded from the operation of the lease, did not pass under the lease, and was excepted from the operation of the lease. A reservation or exception may be implied from the language of the lease, although not expressly mentioned, where the language used shows such intent. 1 Taylor's Landlord and Tenant, Sec. 158; *White* v. *N. Y. & N. E. R. Co.,* 156 Mass. 181; *Claflin* v. *Boston & A. R. R. Co.,* 157 Mass. 489; *Simpson* v. *Boston & M. R. R.,* 176 Mass. 359; *French* v. *Carhart,* 1 N. Y. 96; *Bridger* v. *Pierson,* 45 N. Y. 601. That the parties intended to except from the operation of the lease the surplus water from the well, that is, so much of such water as should not be necessary for the proper irrigation of the 3.88 acres demised to the defendant and for his domestic purposes is

apparent from the language used by the parties in the lease and by conditions existing on the ground. In the lease to the defendant we find the recital that "the said demised premises being the same now occupied and cultivated by the lessee herein." It is alleged in the bill of complaint that the plaintiff had been using two-thirds of the water from the well for the irrigation of his land for three years prior to the filing of the bill and that one-third of the water from said artesian well had been for three years prior thereto and now is more than sufficient for the proper irrigation of the lands demised to the defendant and for his domestic purposes. The demurrer to the bill admits every material allegation therein. It thus appears from the allegations of the bill and from the exhibits annexed thereto and made parts thereof that plaintiff and defendant had been using the water flowing from the well—the former about two-thirds and the latter about one-third thereof—prior to the execution of the lease to the defendant, and that such proportion of the water was sufficient for each and necessary for the irrigation of the lands of each. While the plaintiff obtains no interest from the lease to the defendant and is not a party thereto he is interested in a proper construction of that lease. The recitals in the lease to the defendant, and the prior existing conditions on the land, presumably known to him, are of importance as tending to show what was in the mind of the parties, lessor and lessee, when the defendant's lease was executed. When these conditions are known it is an easy matter to determine how much of the water from the well was intended to pass to defendant and that the intent of the parties that only so much of it should pass as might be necessary for the proper irrigation of the lands demised to the defendant and for his domestic purposes seems clear. To hold that this express stipulation in the lease, because not found in the premises or in the habendum, is mere surplusage and must

be disregarded or stricken out of the lease would be to make a contract for the parties other than the one which they have made for themselves. This the court is not authorized to do. Suppose the well flowed enough water to irrigate one thousand acres of land, would it be contended that all of the water passed to the defendant under his lease? If the contention of the defendant here is upheld we would also have to uphold the same contention notwithstanding that a thousand acres of land were being irrigated and had been irrigated for three years prior to the execution of the lease by said artesian well instead of the six acres irrigated by the plaintiff. In addition to the conditions existing on the land mentioned and the expressed stipulation of the parties, affirmatively stated, that defendant was to use as much water from the well as should be necessary to the proper irrigation of the lands demised to him and for his domestic purposes, the defendant expressly covenanted in the said lease that he would not make or suffer waste or unlawful use of the demised premises and "That he will not sell or permit water to be taken away by any person from said artesian well, by pipe or otherwise, without the consent in writing of the lessor, its successors or assigns." The lessor could have sold the right to take all of the water from the said artesian well prior to making the lease to the defendant, the use of such water being assignable by deed or lease (40 Cyc. 740). This being true he could certainly except from the operation of the lease such water or any portion of it. But was all of the water of the artesian well demised to the defendant, the intent of the lessor and lessee to the contrary notwithstanding, by the term "appurtenances" found in the habendum of the lease to the defendant? An appurtenant to land is something incidental to it and necessary to its use and enjoyment. *Simmons* v. *Cloonan*, 81 N. Y. 557. Under the term "appurtenances" in the deed or lease only such rights

or privileges as are necessary to the land pass. "A thing is appurtenant to something else only when it stands in the relation of an incident to a principal, and is necessarily connected with the use and enjoyment of the latter" (*Humphreys* v. *McKissock,* 140 U. S. 304, 313, 314). See also *Harris* v. *Elliott,* 10 Pet. 25, 54; *Jackson* v. *Hathaway,* 15 Johns. 447, 455; *Linthicum* v. *Ray,* 9 Wall. 241. The water that had theretofore been used on the lands demised to the defendant and was then being used on them and necessary for their use passed by the term "appurtenances" as well as by the expressed stipulation of the parties in the lease, but the water from the well theretofore used on the other lands for irrigation and then being used on such other lands and necessary for their cultivation did not pass by the term "appurtenances" in the lease or as appurtenant to the lands demised to the defendant, and, as we have endeavored to show, was excepted from the operation of the lease.

It is said, however, that the right to use water from a flowing stream on the land of another is an easement and that easements are matters of reservation and not of exception in a lease. "An easement is a liberty, privilege, or advantage without profit which the owner of one parcel of land may have in the lands of another" (14 Cyc. 1139). The exception of the water from the well not necessary for or used in the irrigation of the lands demised to the defendant was not the reservation of an easement; it could not be such in the very nature of things. Here the lessor demised certain lands with their privileges and appurtenances and the parties expressly agreed that so much of the water as flowed from a certain artesian well on one of the four parcels demised "as may or shall be necessary for the proper irrigation of the lands demised" should be used by the lessee. This did not grant to the lessee during his term the use of all of the water from said artesian well, and that

portion thereof which did not pass by the lease to the defendant was retained by the lessor and it was not necessary to make an express reservation or exception of it in the lease. Under the allegations of the bill, the truth of which were admitted by the demurrer, one-third of the water flowing from the well was sufficient to properly irrigate the lands demised to the defendant and supply him with water for domestic purposes, while the remainder of said water was leased to the plaintiff by the mutual lessor of the parties to this suit and such surplus water was necessary for the irrigation of plaintiff's growing crops. There was, under the circumstances alleged in the bill of complaint and the conditions existing on the land, shown in the bill of complaint and known to both lessor and lessee, an implied reservation of an easement of the right of way through the ditch used by both plaintiff and defendant at the time of and prior to the execution of the lease to the defendant as was necessary to convey the water used by the plaintiff. The bill stated facts sufficient to entitle the plaintiff to the relief sought by him, contains equity, and the demurrer should have been overruled.

The decree dismissing the bill of complaint is reversed and the cause is remanded to the circuit judge with instructions to overrule the demurrer of the defendant to the bill of complaint and for further proceedings consistent with the views herein expressed.

*C. F. Peterson* for plaintiff.

*Lorrin Andrews* (*E. A. Douthitt* on the brief) for defendant.

### CONCURRING OPINION OF COKE, J.

I concur in the opinion of Mr. Justice Quarles to the effect that the decree dismissing the bill of complaint should be reversed. I do not understand that the opinion

goes to the extent of holding that the surplus water from an artesian well does not belong to the land on which the well is situated or that upon a conveyance of the land that all the water, in the absence of an exception or reservation of a part thereof, would not pass to the grantee. It appears to me that in the lease between the Chinese Y. M. C. A. and the respondent the water, over and above what was reasonably necessary for the purpose of irrigating the lands demised to respondent and for his domestic purposes, was excepted from the operation of the lease and remained with the landlord. The provision in the lease that the lessee was to have the right to use as much of the water of the artesian well as was necessary for irrigation and domestic purposes was in effect a limitation upon the amount of water to which he was entitled. I am convinced from a study of the lease and the other records before us that this was the clear intent and understanding of the parties at the time the lease in question was executed.

### DISSENTING OPINION OF ROBERTSON, C.J.

I am unable to concur either in the view that an intent to except the surplus water from the operation of the lease is inferable from the language used in the lease though it be read in the light of the surrounding circumstances, or in the view that the surplus water, at the time the lease to the defendant was executed, did not belong to or go with the land on which the well was situated.

An exception in a deed or lease withholds from its operation some part or parcel of the premises which, but for the exception, would pass by the general description. A reservation is the creation of some new right issuing out of the premises, and which did not exist before as an independent right, in behalf of the grantor or lessor. *Pilipo* v. *Scott*, 21 Haw. 609. A right in or to running water upon

the land of another, as distinguished from a right to take
water from a surface well or cistern, is an easement. 14
Cyc. 1143; *Amidon* v. *Harris,* 113 Mass. 59; *Hill* v. *Lord,*
48 Me. 83, 99; *Borst* v. *Empie,* 5 N. Y. 33. Here, it would
be a right issuing out of the premises which prior to the
lease did not exist as a right independent of the title to
the land, and, therefore, would be the proper subject, not
of an exception, but of a reservation. *Sheffield W. Co.* v.
*Elk T. Co.,* 225 Pa. St. 614, 619. The question is whether
a reservation of the right to the water over and above what
is required for irrigation and domestic purposes on the de-
mised premises can be implied or inferred. Technical
words are not necessary to create a reservation of an ease-
ment. It may arise out of a covenant in a lease. But in
order to effectuate an apparent intention of the parties to
a lease to make a reservation the language used by them
must be reasonably susceptible of the required interpreta-
tion. Reservations by implication or inference are not
favored. If the language of a lease is doubtful or ambiguous
as to what was intended to be demised it should be con-
strued against the lessor. 18 A. & E. Enc. Law (2d ed.)
617; *Coney* v. *Dowsett,* 3 Haw. 740. See also *Wells* v. *Gar-
butt,* 132 N. Y. 430, 435, where the court said, "As a grant-
or cannot derogate from his own grant, while a grantee
may take the language of the deed most strongly in his
favor, the law will imply an easement in favor of a grantee
more readily than it will in favor of a grantor, and this dis-
tinction explains many of the apparent inconsistencies in
the reported cases." "If there is a reasonable doubt as to
the meaning of an exception in a lease, the words of the
exception, being the words of the lessor, are to be con-
strued favorably for the lessee, and against the lessor." 1
Taylor L. & T. (8th ed.) Sec. 158. The defendant's lease
demised to him the land in question (excepting "a small
lot near the stream") together with all the "rights, ease-

ments, privileges and appurtenances" belonging thereto. It will be observed that the clause in the lease upon which the complainant bases his claim, namely, "that the said lessee have the right to use as much water of the artesian well on the lands hereby demised as shall be necessary for the purpose of irrigating the said lands and for domestic purposes," is not inconsistent with, and does not in terms derogate from the express general words of demise. Upon the principle that the greater includes the less that clause neither added to nor subtracted from the general terms, and should, therefore, be treated as surplusage. But counsel for the complainant contends, and the majority of the court evidently find, that from the affirmative langugae of the clause in question the negative provision is to be inferred, that the lessee shall not have or use any more water than is necessary for the irrigation of the demised lands and for his domestic purposes, and that from such inference the intent to except the surplus water should be found. And these inferences are raised, be it noted, not against the lessor, but in his favor. But the language of the lease is clear and unambiguous. It demised to the defendant the lands with all the rights, privileges and appurtenances belonging thereto. A reservation of the right to the surplus water in question might perhaps have been held to be reserved by implication as appurtenant to the adjoining land upon which the water was being used at the time of the execution of the lease if the lessor had owned it. See 14 Cyc. 1171, 1172; 9 R. C. L. 757. But it is not averred in the bill that the land occupied by the complainant, and upon which the water was used, belonged to the Chinese Y. M. C. A. The fact that the well supplies more water than can be used on the premises demised to the defendant would lead one naturally to expect that some provision making disposition of the surplus would be found in the lease. There is nothing more than a covenant on the part

of the lessee that "he will not sell or permit water to be taken away by any person from said artesian well, by pipe or otherwise, without the consent in writing of the lessor, its successors or assigns." But it would seem to be more reasonable, and more in accord with the rules of construction, if they had to be invoked, to infer from that covenant that the parties contemplated that the surplus water would be disposed of under some mutual arrangement of the parties, than to infer from the other clause that the lessor reserved to itself an easement in gross in the demised premises. It is neither averred nor argued that the surplus water was reserved as an appurtenance to the piece of land expressly excepted in the lease.

It is said in the principal opinion that "In case of conflict between the premises of a deed and the habendum the former controls." But there is no conflict between the premises and habendum of the defendant's lease. Taylor is quoted to the effect that "conditions and limitations are not to be raised by mere inference." Yet the majority raise the inference that the lessee was not to have or use more than a certain quantity of water and from that inference infer an intent to except from the operation of the lease the rest of the water. The rule *expressio unius est exclusio alterius* is invoked, but the application of that rule, in view of the fact that there is an express exception in the lease of a piece of land, would prevent the inferring of an exception of the surplus water. The question is put whether, if the well flowed enough water to irrigate one thousand acres of land, it would be contended that all of the water passed under the lease. On the other hand it might be asked whether, if the surplus water was sufficient to irrigate only a square yard of land, it would be contended that there was an intent on the part of the lessor to reserve to itself an easement to the extent of such surplus. But the putting of extreme illustrations does not help to solve the problem. The fact

that in his return to the order to show cause why a temporary injunction should not issue the defendant did not claim all that he could have claimed under his lease would not preclude him from asserting a larger or further claim under his demurrer to the bill.

That the surplus water did not belong to the land on which the well is situated and did not pass by the demise of the land because not mentioned in the lease seems to be the position taken in the latter part of the prevailing opinion. No such contention was advanced by counsel for the complainant. The right to take water from a flowing well or stream may be separated by the owner from the title to the land by grant or reservation, and upon such separation the right to the water would become an easement in the land. But until a severance of the title, the water, in the nature of things, is part and parcel of the land, and would pass to a grantee or lessee without its being mentioned in the conveyance. See 3 Farnham on Waters, Sec. 722. It is immaterial whether or not the water was being put to a beneficial use. No distinction is to be drawn between water flowing from a natural spring and such as flows from an artesian well. *De Wolfskill* v. *Smith,* 5 Cal. App. 175, 181. An artesian well on land conveyed without reservation passes as part of the land. *Reid* v. *Reid.* 112 Cal. 274, 277.

It is my opinion that the right to all of the water of the well passed by the demise of the land to the defendant; that the complainant's assignor took no interest in or right to the water under the so-called lease of September 21; that there is no equity in the bill; and that the decree should be affirmed.