JOHN H. O'SHEA *vs.* MARK E. KELLEY Co. & another.

Essex.    October 7, 1930. — November 24, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Easement. Deed,* Construction. *Way,* Private.

The owner of land which fronted easterly on a street in a city, on the front of which were two dwellings about twenty feet apart and on the rear a wood house, in 1839 conveyed the northerly portion thereof and the northerly end of the wood house by a warranty deed with an *habendum* running to the grantee, his heirs and assigns, the dividing line running midway between the dwelling houses and the deed containing the following: "Together with a right of way for teams & otherwise over all the land of mine which lies between the Southerly line of the lot herein conveyed & a line found by running a line straight from the Northeasterly corner of my house next South of this lot conveyed along close by the northerly side of said last named· house straight to the Easterly end of the Wood house which sets on the Southerly boundary line of the lot herein conveyed. Said right of way extends to the easterly side of said wood house and no further. And also the northerly half of said wood house. But I reserve to myself & my assigns a right of way all the way to the Easterly side of said wood house over that portion of the lot herein conveyed which lies between the Southerly side of said lot & a line drawn straight from the Southeasterly corner of the house herein conveyed close along by the Southerly side of said last named house to the Easterly end of said wood house. The intention hereof being to have a right of way for both parties hereto & their assigns all the way to said Easterly end of the said wood house over all the land between the two houses about twenty feet wide to the wood house. The well to be used by both parties and their assigns." A judge of the Land Court, who heard a petition by a successor to the title of the southerly portion of the land, filed in 1929, found that the wood house had disappeared many years before and a storehouse, partly on both properties but a little larger than the wood house, had been built in its place; that the respondent, successor in title to the grantee in the 1839 deed, had obstructed the half of the way on his land for more than twenty years before 1909, but that

nothing had taken place to constitute a legal obstruction of that part of the common way within the confines of the petitioner's property and that the rights had not been abandoned by the respondent or his predecessors in title. He, however, ruled that the petitioner had title free from an easement in favor of the respondent. *Held,* that

(1) The owner of a right of way may erect obstructions in a part of it without abandoning his easement in the rest;

(2) A finding was not required as a matter of law that the respondent's easement over that part of the way on the petitioner's land had been abandoned; the finding of the judge of the Land Court to the contrary must stand;

(3) The easement in the 1839 deed was to the grantee and his heirs and assigns, and was not merely for the life of the grantee;

(4) The ruling of the judge of the Land Court was error and was reversed.

PETITION, filed in the Land Court on May 28, 1929, to which originally Mark E. Kelley Co. was the only respondent, but to which on March 28, 1930, Paul A. Gallagher became a respondent as successor in title to the corporation, for the registration of the title to land in Peabody, described in the petition as follows: "Beginning on Foster Street by land now or formerly of Potter and thence running northwesterly by said land now or formerly of Potter one hundred one feet to the middle of the brook; thence southwesterly by the brook forty-four feet; thence southeasterly by land now or formerly of Richard Loring ninety-nine feet to Foster Street, thence northeasterly by Foster Street forty-four feet to the point begun at." The petition also contained the statement: "Petitioner specifically denies that any persons have any right of way or any other rights whatsoever described."

Filed with the petition was a plan, material features of which are as shown on the following page. The land of the respondents is shown on the right hand side of the plan. The land described in the Goodridge deed referred to in the opinion, the respondents' predecessor in title, is not wholly shown on the plan. That was a warranty deed and the description therein was as follows: "Beginning at the Southeasterly corner of Obadiah Kimball's land on said [Foster] Street, thence running by said Street Southerly about fifty-four feet six inches to a point on said street half way between

the dwelling house hereby conveyed & the dwelling house belonging to me next Southerly on said Street & then turning and running Westerly on a straight line parrallel to the Southerly end of the house hereby conveyed to the centre of the Brook — then turning again & running Northerly down the centre of the brook — to the Southwesterly corner of said Kimball's lot in the centre of the Brook, then turning again and running Easterly by said Kimball's land to the point of starting on Foster Street."

The petition was heard by *Smith*, J. Material facts found and rulings made by him are stated in the opinion. From his decision, the respondents appealed.

*S. H. Donnell*, for the respondents.

*F. E. Rafter*, for the petitioner.

SANDERSON, J. This is a petition to register title to a parcel of land on the westerly side of Foster Street, in Peabody. The respondents are adjoining owners on the north, Gallagher having bought the land from the Mark E. Kelley Co. since the filing of the petition.

The contention of the petitioner is that the respondents have no easement over his property through the southerly part of a space designated "right of way" on the filed plan. The respondents claim such a right by grant under a deed from Benjamin Goodridge to Lydia Potter in 1839, and also claim a reservation of an easement for the benefit of his remaining land. Both lots were formerly owned by a common grantor whose deed, above referred to, contained after the description of the land conveyed and before the *habendum* the following words: "Together with a right of way for teams & otherwise over all the land of mine which lies between the Southerly line of the lot herein conveyed & a line found by running a line straight from the Northeasterly corner of my house next South of this lot conveyed along close by the northerly side of said last named house straight to the Easterly end of the Wood house which sets on the Southerly boundary line of the lot herein conveyed. Said right of way extends to the easterly side of said wood house and no further. And also the northerly half of said wood house. But I

reserve to myself & my assigns a right of way all the way to the Easterly side of said wood house over that portion of the lot herein conveyed which lies between the Southerly side of said lot & a line drawn straight from the Southeasterly corner of the house herein conveyed close along by the Southerly side of said last named house to the Easterly end of said wood house. The intention hereof being to have a right of way for both parties hereto & their assigns all the way to said Easterly end of the said wood house over all the land between the two houses about twenty feet wide to the wood house. The well to be used by both parties and their assigns."

It appears from the decision of the Land Court that the "examiner's report is favorable, subject to, and with the benefit of, easements set forth in the deed." The judge of the Land Court states that the decision of the case rests largely on the proper interpretation of the deed. He found in substance that in 1839 there was a wood shed located partly on both estates, to the east side of which a passageway was laid out ten feet wide by the common grantor of both properties and conveyance was then made of the northerly part of the grantor's estate to the predecessors in title of the respondents. The wood shed disappeared many years ago and a certain wooden building, called a storehouse, has been maintained for a time exceeding twenty years before the filing of the petition. This storehouse covers all the land of the petitioner which was covered by the old wood shed (except a very narrow sliver of land on the north side of said storehouse) and considerably more land. Both dwelling houses shown on either side of the way on the filed plan are old houses and were in the locations shown on the plan for more than fifty years, but the house on the respondents' land has been razed since this petition was filed. The successive owners of the petitioner's property have let the storehouse to local business men during a period of much more than twenty years prior to the filing of the petition, and it has been in constant use by such tenants for their business purposes. In the early days it was used by a

stable keeper, and later by a hardware dealer, and passage
to this storehouse to and from Foster Street has been
over the passageway space within the boundaries of the
locus. No obstruction of any kind had existed in the
part of the passageway so used, but in the northerly part
approximately the westerly half of the same had been
completely obstructed as to common use, for a period of
more than twenty years prior to 1909, by a fence extend-
ing from the northwest corner of the respondents' house
to the middle line of the way, and thence northwesterly
along the middle line of the way to the southeast corner
of the storehouse. In this fence along the middle line a
double gateway was maintained by the predecessors in
title of the respondents, but the only evidence of passage
through the same was an occasional delivery of coal for
domestic purposes at the rear of the house on the respond-
ents' land. In 1918 the storehouse was damaged by fire
and the fence was partly burned and removed. Until
recent years the curbing along Foster Street was so ar-
ranged as to admit of entrance to the passageway in the
southerly half only. In 1920 the Kelley company bought
the property and began to use it for business purposes.
A shed was erected in the rear or westerly part of the
land, and, later, an addition made thereto was devoted
to the storage of material used in the business and for the
sales of such material. In going to and from this shed
trucks and other vehicles travelled over the passageway
on the petitioner's land. Up to 1920 there was no user
of the passageway over the petitioner's land by the suc-
cessive predecessors in title of the respondents except for
occasional delivery of coal for domestic purposes.

When Gallagher bought the property he fitted the land
for an oil station, and the judge inferred that the public
now pass in and out to the oil pumps over any portion
of the right of way which they find convenient. He found
that nothing had taken place to constitute a legal obstruc-
tion of that part of the common way within the confines
of the locus and that the rights had not been abandoned.
He stated that it was difficult to suppose that Goodridge

intended to convey any greater estate in the common passageway than he reserved, and that by mutual agreement the passageways were to be considered similar and equal, and that, in so far as it can be found as a fact from the language of the deed that such was the intention of both parties, he made the finding. He was of opinion that the deed is to be so construed in law, and, so construing it, found that the petitioner has title proper for registration not subject to any easements in favor of the respondents' land, and ordered a decree accordingly, from which the respondents appealed.

The owner of a right of way may erect obstructions in a part of it without abandoning his easement in the rest. *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145. *Brooks* v. *West Boston Gas Co.* 260 Mass. 407. In the decision of the Land Court that nothing had taken place to constitute a legal obstruction of that part of the common way within the confines of the locus, we find no error of law. The mere nonuser of a right of way does not conclusively show an abandonment, and the finding of the Land Court that the rights of the respondents had not been abandoned cannot be disturbed.

In this Commonwealth before the enactment of St. 1912, c. 502, § 19, (G. L. c. 183, § 13,) the use of the word heirs was necessary to create a reservation in fee. *Claflin* v. *Boston & Albany Railroad,* 157 Mass. 489, 493. *Bailey* v. *Agawam National Bank,* 190 Mass. 20. *Childs* v. *Boston & Maine Railroad,* 213 Mass. 91. In the deed now under consideration the grant, as well as the *habendum,* was expressly made to the grantee and her heirs and assigns. These provisions construed by themselves would vest in the grantee an easement in fee in the way. *Pratt* v. *Sanger,* 4 Gray, 84. *Brooks* v. *West Boston Gas Co.* 260 Mass. 407, 409. *Rajewski* v. *MacBean, ante,* 1, 5. The question for decision is whether the expression beginning with the words " The intention hereof " requires that the easement be construed as one for life only. There is nothing in the circumstances disclosed by the record to indicate that the parties would

have any reason for limiting the easement granted to one for the life of the grantee only or that it was the purpose of the parties to benefit the individuals rather than the estates. The wood house at the end of the right of way fixed its westerly terminus, and the northerly half of this wood house was expressly mentioned as a part of the estate conveyed. Before the conveyance was made, the common grantor laid out a passageway ten feet wide to the east side of the wood house. One of the purposes of the easement evidently was to reach this building, a use which would seem to have been intended for the estate rather than solely for the benefit of the grantee. It would be for the convenience of both estates that the right of access to the building in the rear of the property be over the area between the two houses described in the deed. If it be assumed, as suggested in the decision of the Land Court, that it is difficult to suppose that the grantor intended to convey any greater estate in a common passageway than he reserved, it does not follow that his purpose was to reduce what would otherwise be an easement in fee in the grantee to an easement for life. He may have intended that both should have an easement in fee and failed to use the legal terms which would entitle him to such an easement. *Sedgwick* v. *Laflin,* 10 Allen, 430.

But it is not necessary to infer that the parties intended that the duration of the easement granted should be the same as that reserved. The words used in the clause expressing the intention of the grant may be given the meaning that during the lifetime of the parties there should be a common passageway between the two houses of the width described. This is not inconsistent with the provisions granting an easement in fee over the ten foot space between the division line and the house of the grantor. If the construction placed upon the deed by the Land Court is to stand, it would seem that a question of doubt and uncertainty in the deed has been construed against the grantee and in favor of the grantor, while the general rule is that in case of doubt a deed poll is to be construed in favor of the grantee. *Webber* v. *Cox,* 256

Mass. 595, 598. Furthermore, if the clause at the end of the description should be held to be inconsistent with and repugnant to the grant previously expressed as well as with the *habendum,* a rule of construction requiring the rejection of the later clause might be applicable, *Cutler* v. *Tufts,* 3 Pick. 272, *Sprague* v. *Snow,* 4 Pick. 54, 56, *Pynchon* v. *Stearns,* 11 Met. 304, 311, *Birch* v. *Hutchings,* 144 Mass. 561, 563, *Moran* v. *Somes,* 154 Mass. 200, but we are of opinion that, when the terms of the conveyance are considered in the light of the circumstances existing at the time, meaning will be given to every part of the deed so as to carry into effect the intent of the parties as therein expressed, if we hold that by the conveyance an easement in fee in the way was created.

It follows that the ruling and finding of the judge of the Land Court that the petitioner has title proper for registration not subject to any easement in favor of the respondents' land was wrong, and for that reason the decision is reversed.

*So ordered.*