This is a property dispute in Berkley. The plaintiffs, Debra Robbins (both individually and as trustee) and Outdoor Ventures, LLC, filed a complaint in the Land Court seeking to establish that they hold an access easement on land owned by the defendant (Chamberlain).[4] On cross motions for summary judgment, a Land Court judge ruled in Chamberlain's favor and issued a final judgment establishing that the plaintiffs held no easement over Chamberlain's land. On appeal, the plaintiffs no longer argue that they are entitled to summary judgment in their favor. Instead, they argue only that the judge improperly granted summary judgment in Chamberlain's favor by relying sua sponte on grounds that they did not have a fair opportunity to try to rebut. Because we agree, we vacate the judgment and remand for further proceedings.
Background. In or about 2009, the plaintiffs purchased eight lots on, or in the vicinity of, a peninsula known as Shove's Neck. Shove's Neck juts into the Assonet River, and it is connected to the mainland by a causeway that runs through a marsh. Some of the plaintiffs' property does not lie on Shove's Neck itself and has frontage on Bayview Avenue. There is a gravel road (existing access road) that connects Bayview Avenue to the causeway, and hence to Shove's Neck. The plaintiffs own the existing access road, and therefore they already have a means of gaining access to their lots on Shove's Neck. Nevertheless, fearing that they will not be allowed to improve the existing access road in the manner that they desire,[5] the plaintiffs brought the current action seeking to establish that they have an alternative means of reaching the causeway from Bayview Avenue. That route runs through the farm owned by Chamberlain, specifically through the portions of the farm shown as lots 4 and 16 on the town assessors' plan.
On summary judgment, the plaintiffs took the position that they indisputably held a right of way over lots 4 and 16 "as a matter of record." They made only a limited showing to support that claim. Notably, they did not supply a comprehensive title search, nor did they delve into precisely when and how any appurtenant easements establishing such a right of way were created. Instead, the plaintiffs focused their summary judgment argument primarily on Chamberlain's assertions that any easements that may once have been created on lots 4 and 16 were later terminated (through abandonment or adverse possession).
As part of their limited showing that lots 4 and 16 were subject to appurtenant easements that benefited their land, the plaintiffs put forward two main types of evidence. The first was made up of deeds from the chain of title to lots 4 and 16, which referenced a right of way over those lots. With respect to lot 4, the deed in to Chamberlain (Chamberlain deed) stated that the parcel that includes that lot is "subject to two rights of way as set forth in" an 1863 predecessor deed from Nathan Chace to Josiah Chace (Chace deed). The Chace deed in turn states that this parcel is subject to "a right of passageway over the southerly part of said premises for the use of the owners of marsh and other lands southerly from said premises." Because the plaintiffs now own several lots that lie south of lot 4 (including marshland), they claim that such lots are among those that were intended to benefit from the right of way referenced in the Chace deed. The plaintiffs similarly pointed to language in the Chamberlain deed to support their claim that they hold a right of way across lot 16. The Chamberlain deed described lot 16 as being subject to a "right of way for the passing of several parties along the westerly side of said tract." Such language dates back at least to a 1909 deed from Gilbert M. Nichols to another of Chamberlain's predecessors in title (Nichols deed). Based on such references, the plaintiffs claim that lot 8, the lot they own lying westerly of lot 16, is benefited by an appurtenant easement allowing passageway over lot 16.[6]
The other type of evidence that the plaintiffs put forward was a trio of plans that each depict a right of way running from Bayview Avenue southerly across lots 4 and 16, eventually joining the existing access road, and subsequently connecting to the causeway that leads to Shove's Neck peninsula. The first plan was a 1948 survey plan prepared for Gilbert S. Raposa, the second was a 1988 survey plan prepared for the Shoves Neck Realty Trust, and the third was the town assessors' "Property Map: 14."[7] The parties agreed that the three plans show a right of way "in more or less the same location."
In opposition to the plaintiffs' motion for summary judgment, and in support of his own motion, Chamberlain principally focused on the same issues that the plaintiffs did: whether any access easements that once might have existed across lots 4 and 16 since had been lost through abandonment or adverse possession. We reserve for later discussion the extent to which Chamberlain's summary judgment materials raised other arguments as well.[8]
In ruling that the plaintiffs were not entitled to summary judgment but Chamberlain was, the judge did not reach the question whether any access easements that may once have existed since had been lost. Instead, she focused on whether the summary judgment record demonstrated that enforceable appurtenant easements over lots 4 and 16 ever had been created for the benefit of the lots now owned by the plaintiffs. For example, the judge explained that the plaintiffs could not rely on the Chace deed as having reserved an appurtenant easement for the benefit of the plaintiffs' predecessors in title unless they could demonstrate that when Nathan Chace transferred lot 4 to Chamberlain's predecessor in title in 1863, Chace also owned the property that the plaintiffs now claim is benefited by an appurtenant easement. See Hodgkins v. Bianchini, 323 Mass. 169, 172 (1948), quoting Hazen v. Matthews, 184 Mass. 388, 393 (1903) ("An easement cannot be imposed by deed in favor of one who is a stranger to it"). Because there was no evidence appearing in the summary judgment record showing that the owner of the plaintiffs' land in 1863 was a party to the Chace deed, the judge ruled against the plaintiffs.[9]
The judge also relied on an alternative ground. In considering whether the Chace deed effectively reserved an appurtenant easement on lot 4, the judge noted that the reference there to a right of passage included no language of inheritance. The judge reasoned that even "if Nathan Chace had owned the marsh or other lands to be benefited by the reserved right of passageway, such reserved right would not have survived his death ... because a reservation made in a deed prior to 1912 lacking words of inheritance, granted only an estate for life in the grantor." See Elwell v. Miner, 342 Mass. 450, 454 (1961) ; O'Shea v. Mark E. Kelly Co., 273 Mass. 164, 170 (1930). The judge applied similar reasoning with regard to lot 16.
Discussion. As noted, the dispute before us is a narrow one. The plaintiffs make no challenge to the judge's ruling that they failed to demonstrate an entitlement to summary judgment; they argue only that the judge improperly granted summary judgment in favor of Chamberlain.
As the judge correctly recognized, the plaintiffs would carry the burden of proving at trial that they possessed a valid easement over lots 4 and 16. However, with regard to his own motion for summary judgment, Chamberlain was the moving party and thus bore "the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). A moving party's initial "burden is not sustained by the mere filing of the summary judgment motion or by the filing of a motion together with a statement that the other party has produced no evidence that would prove a particular necessary element of [their] case." Id. Rather, "[t]he motion must be supported by one or more of the materials listed in [Mass. R. Civ. P.] 56 (c) [, as amended, 436 Mass. 1404 (2002),] and, although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to be forthcoming." Id.
In his summary judgment materials, Chamberlain asserted in passing that the plaintiffs were "unable to produce deeds or other instruments of conveyance which would supply them with the benefit of a right of way ... [and] are unable to produce other evidence [of this]." However, Chamberlain did not produce any affidavits or other supporting material purporting to show that the plaintiffs likely would be unable to prove at trial that enforceable appurtenant easements had been created.[10] Accordingly, the plaintiffs never faced the burden of having to marshal evidence to the contrary or risk having summary judgment entered against them.[11]
As the judge ably recognized, there are significant gaps in the factual record, such as with regard to whether Nathan Chace owned the plaintiffs' lots at the time the deed was transferred. Such gaps in the record provided a sound basis for the judge to deny the plaintiffs' motion for summary judgment, but not to allow Chamberlain's cross motion.[12] Simply put, the plaintiffs are entitled to an opportunity to develop the factual record to try to address the issues that the judge herself raised.[13] See Monaco v. Lombard Bros., 24 Mass. App. Ct. 941, 941-942 (1987) (reversing grant of summary judgment "on a ground not addressed by either party ... without giving the parties the opportunity to address the question"). We express no view on whether the issues on which the judge focused could be resolved on renewed motions for summary judgment or instead necessitate a trial.[14]
We vacate the judgment and remand this case for further proceedings consistent with this memorandum and order.
So ordered.
Vacated and remanded.

The original defendant was Elmer Chamberlain, who died in 2015, while this action was pending. The current defendant is Elmer's son, Robert A. Chamberlain, who was substituted in as the heir in possession. For convenience, we refer to father and son collectively as "Chamberlain."

The existing access road runs through a marsh, and the plaintiffs' amended complaint alleges that "it may be difficult or impossible to widen [the existing access road] in order to ensure safe ingress and egress for purposes of vehicular access."

The plaintiffs also submitted an affidavit that, inter alia, purported to express an expert opinion about the legal import of the respective deeds and plans. On Chamberlain's motion, the judge struck that portion of the affidavit that encompassed "legal conclusions as to the meaning and effect of the deeds and plans attached to [the expert's] affidavit." That ruling is not challenged on appeal.

As the judge observed, the plaintiffs did not demonstrate that the 1948 Raposa plan or the 1988 Shoves Neck Realty Trust plan had "been prepared in connection with a survey of the Chamberlain land, and the record reveals nothing that connects those plans to any instrument of record that created the depicted rights of way for the benefit of any of Plaintiffs' land."

Although a transcript of the hearing on the cross motions for summary judgment was not provided to us, the parties agreed at oral argument that the discussions at that hearing tracked the arguments raised by the summary judgment briefs.

The judge recognized that the reference in the Chace deed might be read as an exception rather than a reservation, but she pointed out that the plaintiffs had included in the summary judgment record no showing that an appurtenant easement had been created prior to the Chace deed.

Chamberlain did point out that the limited deeds from the plaintiffs' chain of title included in the record did not reference that their property would benefit from any easements. However, this was not the ground on which the judge ultimately relied and, in any event, as the judge herself noted, the absence of such references is not fatal to the plaintiffs' claims. See G. L. c. 183, § 15.

Chamberlain accurately observes that the judge's ruling "was consistent with the assertions made in [his] argument on Motion for Summary Judgment." However, in determining what contentions fairly were placed at issue on summary judgment, mere "consistency" is not the test.

As noted, the judge also relied on the alternative grounds that the rights of way referenced in the Chace and Nichols deeds lacked words of inheritance. To the extent that the plaintiffs are relying on these deeds to have reserved easements over lots 4 and 16, then the judge's conclusion that their claims fail as a matter of law would appear to be sound. See Elwell, 342 Mass. at 454 ; O'Shea, 273 Mass. at 170. But the plaintiffs never committed to these two deeds as the only source deeds, and the judge herself recognized the possibility that the references to a right of way in those deeds could have been read as exceptions rather than reservations, if the summary judgment record supported this construction. To the extent that the deed references did constitute exceptions, the absence of words of inheritance would appear not to be fatal. See Clafin v. Boston & Albany R.R., 157 Mass. 489, 493 (1892). We deem it imprudent to comment further on this issue without a fully developed factual record. The same goes for the plaintiffs' countervailing argument that there is a legal presumption that "[a]bsent any language to the contrary, an easement is presumed to be appurtenant to another estate, and not personal to the grantee" (quotation omitted).

We agree with Chamberlain that the plaintiffs should have filed a motion for reconsideration pursuant to Land Court Rule 9 instead of pressing an immediate appeal. However, we see nothing in that rule or elsewhere that requires that preferable course of action as a prerequisite to filing an appeal.

We note that the judge did not address whether Chamberlain was entitled to summary judgment based on his arguments that any easement that had once existed had been lost through abandonment or adverse possession. The parties have not briefed these issues on appeal, and we decline to reach them as a potential alternative ground for affirmance.